**UNITED STATES of America, Plaintiff,**

v.

**Alvaro VALENCIA, Cesar Agusto Vallejo, Julian Alberto Vallejo and Carlos Vargas–Ocampo, Defendant.**

**No. 88–337–CR.**

United States District Court, S.D. Florida.

March 10, 1989.

## MEMORANDUM ORDER

SCOTT, District Judge.

The Defendants' Joint Omnibus Motion raises first impression legal issues in this Circuit concerning inmate phone conversations recorded by prison officials. Defendants seek to suppress these taped conversations. Defendants argue that "carte blanche" recording of inmate phone conversations violates Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as well as the Fourth Amendment to the United States Constitution. Defendants also raise the Sixth Amendment, hearsay objections and finally 403 relevancy questions. At the request of Defendants, an evidentiary hearing took place.

### I.

### EVIDENCE

The major evidence was offered through Lt. Anthony Richardson, Bureau of Prisons, Metropolitan Correctional Center—Miami ("MCC–Miami"). Lt. Richardson testified that he is responsible for prison security at MCC–Miami, including monitoring of inmate telephone calls. The purpose of monitoring these calls includes prevention of escape and interdiction of drugs.

When prisoners arrive at MCC–Miami, whether they be pretrial arrestees or sentenced defendants, they are requested to execute a "consent and waiver form." All Defendants in this case executed such a form. The form is in English, but interpreters are present at the entry center to read the form to Spanish speaking inmates. Of interest, Lt. Richardson testified that whether or not an inmate executes the consent form, he is still provided access to the prison telephone.

Telephones at MCC–Miami are of two types. First, the "cop-out" system provides private telephones for inmate calls to their attorneys. Inmates must get permission to use the cop-out system. These calls to lawyers are not monitored or recorded by MCC personnel. Second, 32 telephones are available to inmates for general use from 7:30 A.M. to 11:00 P.M. on a daily basis. These multiple lines are randomly

monitored by two MCC–Miami officials. All calls are recorded and the tapes are kept for a 180 day period, unless there is a governmental request to hold the tapes longer.

Signs in Spanish and English are located at each phone. The signs state in bold print:

"NOTICE TO INMATES

This is to advise you the institution reserves the right to monitor conversations of this phone. Your use of this phone constitutes consent for monitoring.

The Warden."

Lt. Richardson testified that there are between 2000 and 2800 inmate calls each day. He stated that every effort is made to reduce the intrusive nature of the telephone monitoring. For example, prison officials instruct monitors to break off listening to an inmate call when the monitor is satisfied that the conversation does not entail a security risk or is being conducted for wrong-doing.

The Government introduced various Bureau of Prison memoranda directed to local facilities concerning guidelines for monitoring of inmate telephone calls (Exhibits 5 and 7). The memoranda demonstrated an awareness of the law and a conscious effort to comply with its dictates. Additionally, Warden John Clark of MCC–Miami has instituted a local policy in order to effectuate these guidelines. *See* 28 C.F.R. § 540.101, *et seq.*

Finally, Agent Joseph Shepherd of the Drug Enforcement Administration testified that he caused to be issued subpoenas directed to MCC–Miami to produce the taped conversations at issue in this case. Shepherd did so based upon conversations with confidential informant(s) which led him to believe that these tapes constituted evidence of past and present criminal activity by the Defendants. In response to these subpoenas, MCC–Miami produced the taped conversations, which the Government now seeks to introduce at trial as substantive evidence to prove criminal intent.

II.

LEGAL DISCUSSION

■ While our research of this issue fails to reveal any dispositive authority from this Circuit, other federal courts have addressed the questions presented here. *United States v. Amen*, 831 F.2d 373 (2d Cir.1987); *United States v. Paul*, 614 F.2d 115 (6th Cir.1980; *but see Campiti v. Walonis*, 611 F.2d 387 (1st Cir.1979). Based upon the authority of *Amen* and *Paul*, the procedures followed by MCC–Miami in this case are consistent with the case law as well as with the provisions of the electronic surveillance statute. 18 U.S.C. § 2510 *et seq.* These cases teach that the Supreme Court's holding in *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) has survived the ruling in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed. 2d 224 (1974), and, therefore MCC–Miami's telephone monitoring practice does not violate the Fourth Amendment. "It still appears to be good law that so far as the Fourth Amendment is concerned, jail officials are free to intercept conversations between a prisoner and a visitor." *United States v. Paul, supra,* p. 116.

■ Title III presents a closer issue. While both *Amen* and *Paul* hold that such prisoner monitoring is permissible under the statute, they do so under different rationales. One view is that Congress never intended Title III to apply to prisons. *United States v. Paul, supra,* p. 117 (Philips, J. concurring). A second view is that while Title III does apply, prison monitoring is excepted under 18 U.S.C. § 2510(5)(a) which excludes from the ambit of Title III the interception of communication over equipment used by "an investigative or law enforcement officer in the ordinary course of his duties." *United States v. Paul, supra,* p. 117. A third view, as expressed in *United States v. Amen, supra,* p. 378, is that such view falls within the consent exception to Title III. *See also United States v. Montgomery*, 675 F.Supp. 164

(S.D.N.Y.1987); *United States v. Clark,* 651 F.Supp. 76 (M.D.Penn.1986); and 57 A.L.R. 3d 172.

Regardless of the rationale, we agree that such prisoner monitoring does not violate Title III. We reach that conclusion predicated principally upon four factors: (a) the policy implemented by MCC–Miami, under 28 C.F.R. §§ 540.100–540.105; (b) the salutory purpose behind the monitoring, security and drug interdiction; (c) the notices prominently posted; and (d) the consent forms executed by the defendants. Accordingly, we deny the Motion to Suppress. We next turn to other issues raised by the Defendants.

The conversations of the Defendants do not contain any directly incriminating statements. However, the contents of some of the recordings are incriminating when considered in context of the circumstances of the Defendants' arrests. None of the statements by the Defendants directly accuses other Defendants of participation in criminal activity. Their references to each other does tend to indicate that they know each other; they were arrested as a result of the same incident; and they are incarcerated together. These facts are not disputed issues for trial.

■ The Defendants raise hearsay objections to the tape recordings. We overrule the objections finding that the Defendants' statements are admissible pursuant to Fed.R.Evi. 801(d)(2)(A) and (C). The Defendants' argument that a conversation of one Defendant which refers to another Defendant is not admissible also lacks merit. References in a conversation by one defendant to another co-defendant are not rendered inadmissible in a trial, unless they contain accusations or direct imputations of guilt against the co-defendant. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *see Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Here, our initial review of the tapes reveals no *Bruton* situation.

They are therefore fully admissible in the same fashion as any recorded conversation of one defendant in a multi-defendant trial. In any case, a limiting instruction, *see* Fed.R.Evi. 106, provides the appropriate remedy, except in those situations where the statement reflects that it is being made as an agent for one of the other defendants. That question will be resolved at trial after appropriate arguments. (An appropriate limiting instruction might be, "defendant's conversation is to be considered as evidence only of his own knowledge and intent to participate in cocaine possession, and not as evidence of the guilt of any of the others.")

■ In one recording, a Defendant instructs a relative to call a particular defense attorney. He does not tell her what number to call; who he is; or what to tell him. The conversation is limited to the lawyer's name. At trial, the Government will ask the jury to draw an inference that prior to his arrest, the Defendant told this relative to contact this attorney in the event he got arrested. The Government will argue that this is the reason why no phone number or further identification was needed; she already knew what to do. The Government contends that this statement is significant evidence that the Defendant knew he would be involved in criminal acts. The Defendants counter that the evidence should be excluded because it violates their Sixth Amendment right to counsel. We easily reject the constitutional argument. The mere fact that a phone call is made to a lawyer violates no constitutional directive that the Court is aware of, under these facts. Whether such evidence is relevant, in light of the possible prejudice to the Defendants, presents another issue. Fed.R.Evi. 403. However, weighing the various considerations, we agree that the evidence is probably admissible with an appropriate limiting instruction.

### III.

### CONCLUSION

The tape recorded conversations do not violate Title III or the Fourth Amendment. Furthermore, the statements do not run afoul of the hearsay rule. As to the remaining 403 objections, if any, e.g., preju-

dice, etc., these shall be put in writing by the morning of trial. The Court will consider them at that time. In all other regards, the Defendants' Motion to Suppress and Exclude Evidence of the tape recorded conversations is denied.

DONE and ORDERED.