The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1997), 117 Ohio App.3d 656.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69359.

Decided Feb. 24, 1997.

658

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Deborah Naiman,* Assistant Prosecuting Attorney, for appellee.

*James R. Willis,* for appellant.

*George Smith, pro se.*

NAHRA, Judge.

Appellant, George Smith, appeals his conviction for drug trafficking in violation of R.C. 2925.03. The trial court convicted Smith after he pled no contest to a one-count amended indictment. Appellant entered his plea after the trial court

denied his motion to suppress evidence. This appeal challenges the trial court's denial of his motion to suppress as well as the trial court's forfeiture order.

The material facts are not disputed. Beginning in 1991, Smith was incarcerated at the Grafton Correctional Facility ("Grafton"). On or about July 29, 1994, Smith placed a series of telephone calls to his wife, Lisa Smith ("Lisa"), who lived at 16007 Lotus Drive, Cleveland (the "premises"). A sign placed over the telephones used by appellant read: "All Telephone calls are subject to being monitored." Despite such warning, Smith contacted his wife and others in a series of multiparty telephone calls and arranged a drug transaction. A Grafton investigator, Edward Young, monitored these phone calls pursuant to prison policy. Aware of the inchoate transaction, Young notified Cleveland police.

Based on the information supplied by Young, the police obtained a search warrant for the premises. Before arriving at the premises, police officers detained Lisa approximately one mile from her home, apprised her of her rights, advised her that they had a search warrant, and returned with her to search the premises. During the search, police discovered records that indicated that Lisa rented a storage locker. Officers verified the existence and ownership of the locker and then obtained a search warrant. In the locker police found four kilograms of cocaine as well as firearms.

On August 2, 1994, Young again contacted Cleveland police. He told them that during a phone call placed after the first search of the premises, Smith asked Lisa whether officers had searched remote areas of the attic. This information caused police to return to the premises and attempt to gain consent to search the home. Consent was denied. However, before leaving the premises, an officer observed Lisa throwing bags out an upper floor window. These bags contained guns, money, and plastic bags coated with cocaine residue. Based on these facts, and the preceding week's events, officers obtained a second search warrant for the premises.

Thereafter, appellant was indicted for drug trafficking. After a lengthy suppression hearing resulting in the trial court's denial of his motion to suppress, Smith pled no contest. He was duly sentenced and now appeals asserting eight assignments of error.

## I

We begin with appellant's last assignment of error, which states:

"The court erred when it failed to regard the monitoring of the defendant's phone calls, albeit from prison, made to his wife as a violation of the defendant's Fourth Amendment rights and of the marital privilege."

Although not indicated in the assignment of error, appellant's challenge rests on three distinct grounds.

■    First, Smith claims that his Fourth Amendment rights were violated when Young intercepted and monitored his telephone calls.

■    "The Fourth Amendment applies to searches and seizures. ' * * * A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  * * * ' *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94." *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 364, 588 N.E.2d 116, 124.

■    Monitoring and recording telephone conversations are a search within the meaning of the Fourth Amendment. *Katz v. United States* (1967), 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 582–583. To invoke the exclusionary rule, appellant must establish a violation of his Fourth Amendment rights.

■    "In order for a party to succeed in challenging a search on Fourth Amendment grounds: (1) that party must have a subjective expectation of privacy in the object of the search, and (2) society must be prepared to recognize that expectation as reasonable." *Stone v. Stow* (1992), 64 Ohio St.3d 156, 163–164, 593 N.E.2d 294, 299–300.

Whether the monitoring of inmate phone calls violates the Fourth Amendment appears to be a issue of first impression in this jurisdiction. With near unanimity, federal and state courts have upheld the practice. See, *e.g., United States v. Van Poyck* (C.A.9, 1996), 77 F.3d 285; *United States v. Paul* (C.A.6, 1980), 614 F.2d 115; *State v. Fox* (Iowa 1992), 493 N.W.2d 829.

■    These courts have upheld the practice on one of two independent grounds. Some courts have held that when placed on notice of telephone monitoring, a prisoner does not have the requisite subjective expectation of privacy to incur a Fourth Amendment violation. See *Poyck,* 77 F.3d at 290; *United States v. Amen* (C.A.2, 1987), 831 F.2d 373, 379. Other courts have held that society is not willing to recognize any such subjective expectation of privacy because the institutional interest in security outweighs the prisoner's privacy rights. See *Fox,* 493 N.W.2d at 832; *United States v. Willoughby* (C.A.2, 1988), 860 F.2d 15, 21. We agree with both views and accordingly hold (1) that where a prisoner has notice of a telephone monitoring practice and elects to place a telephone call, he has no subjective expectation of privacy and (2) that a prison is permitted under the Fourth Amendment to monitor telephone calls placed by its inmates in the interest of institutional security.

■ The second facet of appellant's attack on the telephone monitoring practice relies on Sections 2510–2521, Title 18, U.S. Code, Title III of the Omnibus Crime Control and Safe Streets Act. See, also, R.C. 2933.52 (Ohio's wiretapping statute). Title III generally prohibits unauthorized and intentional interception of wire communications including telephone conversations. Several exceptions to the broad prohibition exist. First, Section 2510(5)(a) permits interception of a wire communication by an "investigative or law enforcement officer in the ordinary course of his duties." Similarly, where a party to a communication consents to the interception, Title III's prohibition is inapplicable. Section 2511(2)(c). An interception exempt under Title III is permissible under Ohio's statutory analog. R.C. 2933.52(B)(1).

Again, this is an issue of first impression in Ohio. Nearly all of the courts addressing the issue have found that Title III does not prohibit the monitoring of inmate phone calls. See, e.g., United States v. Workman (C.A.2, 1996), 80 F.3d 688; United States v. Horr (C.A.8, 1992), 963 F.2d 1124; United States v. Van Poyck; United States v. Willoughby, supra. These courts have used several bases to uphold the practice of monitoring inmate phone calls under Title III. One approach, adopted by the Sixth Circuit Court of Appeals in Paul, supra, recognizes that a corrections officer who intercepts an inmate phone call, pursuant to an established institutional policy, acts as an "investigative or law enforcement officer" within the meaning of the statutory exemption. See, also, United States v. Feekes (C.A.7, 1989), 879 F.2d 1562, 1566; Fox, 493 N.W.2d at 830. Courts have also held that an inmate consents to the interception where he has notice of the monitoring practice. See Workman, supra; United States v. Valencia (S.D.Fla.1989), 711 F.Supp. 608. See, also, State v. Kehling (Me.1991), 601 A.2d 620 (construing Maine's Title III analog). The Ninth Circuit Court of Appeals in Van Poyck, supra, adopted both views.

We agree with these courts and hold that Young did not violate Title III when he intercepted and monitored Smith's telephone conversation. The record demonstrates that it was standard operating policy at Grafton to routinely and randomly intercept inmate telephone calls and to monitor those calls that appeared related to criminal activity. Young's actions fell squarely within the statutory exception for investigative and law enforcement officers. Moreover, as we have previously discussed, appellant's use of the telephone with notice of the monitoring practice constitutes consent. The trial judge correctly denied appellant's motion to suppress evidence on this basis.

■ Finally, appellant cites R.C. 2917.02 (aggravated riot) and 2945.42 (competency of witnesses) as grounds for holding inadmissible testimony regarding telephone conversations between Smith, his wife, and third persons. Neither of

these provisions renders Young's testimony inadmissible either at trial or at a suppression hearing. R.C. 2945.42 states:

"Husband or wife shall not testify concerning a communication made by one to the other, * * * during coverture, unless the communication was made or act done in the known presence or hearing of a third person."

This provision does not apply to the testimony of Young. Further, appellant has no basis for claiming that the communications were outside the known presence of third persons. Appellant's apparent attempt to invoke R.C. 2317.02(D) (privileged communications and acts) is similarly misplaced. This statute is nearly identical to R.C. 2945.42 and prevents only spouses from testifying. Nothing in the aggravated riot statute (R.C. 2917.02) is here relevant.

Having found each argument meritless, we overrule appellant's eighth assignment of error.

## II

In addition to impugning the lower court as a "rubber stamp for the police," appellant assigns error relating to the sufficiency of the warrant affidavits. Smith's first assignment of error states:

"The trial judge's ruling to the contrary notwithstanding, the affidavits failed to set forth probable cause to search the appellant's home (on either of the two occasions it was searched) for anything."

The relevant paragraphs of the first affidavit state:

"1. During the late morning of July 29, 1994 affiant spoke to correction officers from Grafton Correctional Facility in Grafton, Ohio after said corrections officer had contacted affiant's unit; said corrections officer related to the affiant the following:

"2. That earlier on July 29, 1994 said corrections officer learned that a Lisa Smith currently has a large amount of cocaine, several kilograms, at 16007 Lotus Drive, Cleveland, Ohio; That Lisa Smith is somehow related to a George Smith who is currently an inmate at Grafton:

"3. That said cocaine was to be repackaged today, July 29, 1994, for distribution throughout the community; That another male was expected to arrive at said 16007 Lotus Drive location to assist in the re-packaging."

Appellant maintains that these recitals cannot contribute to a finding of probable cause because they do not set forth the basis of the corrections officer's knowledge.

The Ohio Supreme Court has adopted a "totality of the circumstances" standard to evaluate whether probable cause is set forth in an affidavit. In *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, the court stated in paragraphs one and two of the syllabus:

"1. In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [1983], 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527, 548, followed.)

"2. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, followed.)"

The first warrant affidavit contains a substantial basis on which to find probable cause. Indeed, the above-recited paragraphs of the affidavit establish the basis of the informant's knowledge. The informant was a corrections officer and the appellant was incarcerated where the informant worked. The affidavit additionally provides a detailed account of what the informant learned. Such an account lends credibility to the informant. See *State v. Farndon* (1984), 22 Ohio App.3d 31, 35–36, 22 OBR 107, 111–113, 488 N.E.2d 894, 898–899. Further, Young reported criminal activity.

"[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Id.*

If false, Young's statements as recited in the affidavit would subject him to criminal liability (see, *e.g.*, R.C. 2921.13, falsification), potentially significant civil liability, and probably the loss of his employment. Given these facts, in the light of practicality and common sense, the totality of the circumstances depicted on

the face of the affidavit provided the requisite substantial basis to issue the warrant.

▮ Appellant's attack on the second search warrant for the premises is similarly without merit. The affidavit describes the discovery of cocaine in the footlocker. It provides additional information gained from Young indicating that the premises were not sufficiently searched the first time. The affidavit indicates that after the first search, police observed Lisa throw bags containing handguns and money out an upper floor window of the premises. These and other averments invested the second affidavit with a substantial basis to find probable cause.

As each search warrant was properly issued, appellant's first assignment of error is overruled.

## III

▮ Smith's second assignment of error states:

"Where the affiant without a factual basis swore, in his affidavit for a warrant, that a corrections officer had specifically and without equivocation advised the police that there were kilograms of cocaine present in a particular home, and the officer credited with having made the statement denies (under oath) having done so, the affidavit is false and cannot be cured even by the good faith exception."

In *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819, 832–833, the Ohio Supreme Court articulated the standard for analyzing this argument.

"To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.' *Franks v. Delaware* (1978) 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672."

▮ A search warrant is not *per se* invalid upon proof of an intentional misrepresentation in the underlying affidavit. *State v. Hunt* (1984), 22 Ohio App.3d 43, 44, 22 OBR 139, 140–141, 488 N.E.2d 901, 903–904. Rather, if after excising any "deliberate falsehoods and/or reckless misstatements" the remaining averments of the affidavit are sufficient, the warrant remains valid. *Id.*

Appellant has not demonstrated, and the record does not appear to contain, specifically what Young communicated to the affiant. Young testified as follows:

"Q. * * * did you tell them [the police] that, that you knew that there were several kilograms on Lotus Drive?

"A. I advised—in my opinion they were warehousing drugs. I don't know if I said that, I gave them the address of that residence based on the phone call.

"Q. If this detective, Detective Kooser, put in his affidavit the following, 'That earlier—'

"Mr. Grays: Objection.

"Ms. Naiman: Objection.

"Q. 'That earlier on July 29, 1994 said corrections officer learned that a Lisa Smith currently has a large amount of cocaine, several kilograms, at 16007 Lotus Drive, * * *'; that would be incorrect, that statement, isn't that correct?

"A. No sir, it is not correct.

"Q. Is it not correct?

"A. What do you mean the statement?

"Q. The statement that you told Kooser?

"A. That is what I told him that I believed the drugs were warehoused there and also that there was a mention of a store.

"Q. And did you tell him that she had several kilograms or a large amount of cocaine on Lotus?

"A. Based on the conversation, yes, I did."

Appellant alleges a discrepancy between this testimony and paragraph two of the first affidavit:

"[O]n July 29, 1994 said corrections officer *learned* that a Lisa Smith currently has a large amount of cocaine * * * at 16007 Lotus Drive, Cleveland, Ohio * * *." (Emphasis added.)

Smith argues that "learned," as used in the affidavit, misrepresents what Young told the affiant. Although somewhat ambiguous, Young's testimony does not indicate clearly that he told Kooser he merely opined as to the presence of drugs at the premises. Lacking such proof, an intentional or reckless misrepresentation is not shown.

Moreover, appellant's argument relies on a technical difference between the precise meanings of knowledge and belief. Understanding subtle and often legalistic nuances of language is not a burden our courts have placed on peace officers who draft warrant affidavits. See *State v. Bean* (1983), 13 Ohio App.3d 69, 73, 13 OBR 83, 87–88, 468 N.E.2d 146, 151–152. We are not persuaded that this alleged discrepancy establishes to the requisite quantum of proof, an intentional or reckless misrepresentation within the affidavit. Appellant failed to produce any other evidence of an intentional misrepresentation. Accordingly,

Smith did not meet his burden of proof under *Waddy* and we overrule his second assignment of error.

## IV

Smith assigns two errors to the search of the footlocker. The first of these, appellant's third assignment of error, states:

"Given the various Fourth Amendment violations committed by the police in connection with the detentions made in, the search made of, and the seizures made at, the appellant's home, it follows that the court erred when it failed to regard the contraband located in the subsequent search made of the storage locker must be excluded as fruit of the poisonous tree."

Smith argues that a litany of acts were unconstitutional. He alleges that police acted illegally in all of the following: the arrest of Lisa, restraining her, searching her purse, and seizing cancelled checks from her purse.

It is fundamental that a defendant must have standing to challenge the legality of a search or seizure. *State v. Williams* (1995), 73 Ohio St.3d 153, 166, 652 N.E.2d 721, 732–733. "The Fourth Amendment right to be free from unreasonable searches and seizures cannot be vicariously asserted." *State v. Steele* (1981), 2 Ohio App.3d 105, 107, 2 OBR 118, 120, 440 N.E.2d 1353, 1356. Accordingly, Smith cannot maintain his challenge to the legality of either the search and seizure of his wife or the procuring of statements from her.

Defendant also alleges that the first search of the house was illegal, and that under the "fruit of the poisonous tree" doctrine, the evidence subsequently discovered in the footlocker should have been ruled inadmissible. This allegation relies on invalidating the first search warrant. Having previously ruled that the first warrant was valid, we find appellant's argument without merit.

Finally, defendant asserts that the warrant to search the footlocker was issued upon a perjured affidavit. The allegedly false averments of the warrant affidavit state:

"3. While surveilling said premises on Lotus before executing said search warrant, officers surveilled said Lise Smith leaving that premises and driving to the area of Miles Avenue where officers lost sight of her;

"4. Said officer recalled that the area where they lost sight of said Lisa Smith was in the area of where one of the Public Storage facilities are located; Other officers then left said Lotus location and went to 22800 Miles Avenue where said Public Storage is located according to the phone book."

Appellant's allegations of misconduct are not supported by the record. Moreover, the affidavit provides a substantial basis for finding probable cause in

absence of the allegedly offending provisions. *Hunt, supra,* 22 Ohio App.3d 43, 22 OBR 139, 488 N.E.2d 901.

For the foregoing reasons we conclude that appellant's third assignment error is without merit.

## V

Smith's next attack on the evidence obtained during the footlocker search arises in his sixth assignment of error, which states:

"The court erred when it ruled Lisa Smith was not arrested and was only being detained *and* that statements made by her could be considered in determining whether probable cause existed to search the storage locker."

Similar to his third assignment of error, appellant's argument concludes that the information establishing probable cause in the warrant affidavit was illegally obtained, thereby rendering the search warrant invalid. The warrant affidavit was based on evidence obtained during the search of the premises, statements made by Lisa, and evidence obtained during the search of Lisa and her vehicle. Again, however, Smith has not demonstrated standing to contest the legality of the alleged interrogation or the search or seizure of Lisa. See *Steele, supra,* 2 Ohio App.3d 105, 2 OBR 118, 440 N.E.2d 1353. Also, Smith's attempts to establish illegality in the search of Lisa's vehicle are flawed.

"A defendant has no standing to contest the search of an automobile and seizure of evidence therefrom where (1) the defendant was not present when the search and seizure occurred; (2) the defendant alleges no proprietary interest in the automobile; and (3) the the [*sic*] defendant is not charged with an offense which includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. (*Brown v. United States,* 411 U.S. 223 [93 S.Ct. 1565, 36 L.Ed.2d 208].)" *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph one of the syllabus, vacated on other grounds (1978), 439 U.S. 811, 99 S.Ct. 69, 58 L.Ed.2d 103. Appellant was incarcerated at Grafton when the search took place. Smith did not own the vehicle and he was not charged as specified in *Adams.* Thus, appellant has no standing to establish the illegality of the search of the vehicle.

Appellant's sixth assignment of error is overruled.

## VI

Smith's last substantive challenge to either search of the premises alleges that both searches were unconstitutional in scope and in intensity. Assignment of error number five states:

"The unreasonable conduct of the police involved in their execution of the warrants for Lotus Avenue violated due process."

Smith maintains that the police ransacked the premises. The trial court prevented testimony on this issue. Appellant proffered testimony of his grandmother pursuant to Evid.R. 103. The testimony proffered was that the police "ravaged" her home. No other testimony was heard or proffered.

We hold that the proffered testimony alone would not have established a constitutional violation. Appellant did not produce independent corroborating testimony. He did not produce photographs. No complaints were filed with any governmental agency. The fact that boxes, trash cans, and drawers were emptied in a search for drugs does not manifest a constitutional violation. Additionally, despite appellant's contrary assertions, the scope of the search did not exceed the authority of the warrant. Accordingly, we overrule appellant's fifth assignment of error.

## VII

Appellant assigns two errors to the trial court's order requiring forfeiture of all contraband seized. Assignment of error number four states:

"Given the fact that no probable cause was set forth in the affidavit for any of the money and the guns seized, even assuming probable cause was set forth for a specific seizure, clearly the court erred in ordering the forfeitures of all the funds and other property seized from the appellant's home."

Smith's seventh assignment of error states:

"The trial court erred when it did not address in its Rule 12(E) findings and in its decision denying the motions to suppress the very distinct, isolatable aspect of the appellant's motion, which sought the return of illegally seized property."

The record indicates that appellant was aware that specific property would be forfeited if he pled no contest. Indeed, he requested that certain personal effects be returned from the otherwise forfeited *res*. By entering into a plea arrangement and voluntarily relinquishing the forfeited property, Smith waived any procedural or due process right with respect to the forfeiture order. *State v. Wyley* (Oct. 20, 1994), Cuyahoga App. No. 66163, unreported, 1994 WL 581522; *State v. McGowan* (Nov. 10, 1993), Cuyahoga App. No. 62465, unreported, 1993 WL 462876; *State v. Gloeckner* (Mar. 21, 1994), Meigs App. No. 520, unreported, 1994 WL 111337. Accordingly, appellant's fourth and seventh assignments of error are overruled.

We affirm the trial court's ruling on the motion to suppress and the forfeiture order.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and KARPINSKI, J., concur.