OPINION
Appellant Carlena Miller appeals the decision of the Licking County Court of Common Pleas, which denied her motion to suppress evidence and subsequently found her guilty on two drug-related possession charges. The relevant facts leading to this appeal are as follows.
On February 6, 2001, Officer Douglas Bline of the Newark Police Department was in the process of investigating a house suspected of being the location of drug trafficking. From his cruiser stationed near the site, the officer observed a vehicle driven by appellant park in front of the house, facing the wrong way. Appellant entered the residence for a brief time, then came outside with a male individual. Appellant proceeded to the vehicle and got into the driver's seat, while the other individual took a seat on the front passenger side. At that point, the officer approached the vehicle and asked for identification from both appellant and her passenger, each of whom responded by stating a name and social security number ("SSN"). The officer then radioed his dispatcher to conduct a LEADS check. Appellant's information was valid and revealed no outstanding warrants. However, the passenger's social security number traced back to a resident of Portsmouth, Ohio, with an age in the mid-fifties, while the passenger appeared to the officer to be in his twenties. The officer returned to appellant's vehicle and double-checked the passenger's SSN. The passenger thereupon corrected a couple of digits in the number. The officer issued appellant a warning for the parking violation and allowed the vehicle to depart, but told the passenger that if the next LEADS check was problematic, he would immediately stop appellant's car. The officer again asked his dispatcher to check the corrected SSN, and in the meantime followed appellant's car. When the dispatcher reported that the passenger's given SSN came back as "nothing on file," the officer effectuated a traffic stop as forewarned.
Upon the officer's instruction, appellant pulled into a parking lot. The officer told appellant to stay in the vehicle, while directing the passenger to step outside to discuss his identity information. At that point, the officer noticed near the passenger seat a small plastic bag and a walnut pick with apparent residue on the tip. The officer proceeded to pat down the passenger, who finally admitted he had given false identity information. The officer then looked over at appellant, who had opened the driver's side door and was reaching under the seat. He immediately ordered her to pull her hands away, and ordered her to move away from the car. The officer obtained appellant's permission to search the vehicle, which appellant claimed belonged to her brother. The search revealed a crack pipe and a tupperware container with a rock of cocaine.
Appellant was subsequently charged with one count of possession of crack cocaine and one count of possession of drug paraphernalia. On May 1, 2001, appellant filed a motion to suppress the evidence obtained during the aforesaid incident. Following a hearing, the court issued a judgment entry on June 13, 2001, denying the motion to suppress. On July 7, 2001, appellant appeared before the trial court and entered a new plea of no contest to the possession charge and the paraphernalia charge. Appellant was thereupon found guilty on both counts and sentenced to community control sanctions.
Appellant thereafter timely appealed and herein raises the following sole Assignment of Error:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE MOTION TO SUPPRESS FILED BY THE DEFENDANT-APPELLANT AND ALLOWING UNCONSTITUTIONALLY OBTAINED EVIDENCE TO BE UTILIZED IN THE PROSECUTION OF THE INSTANT MATTER.
 I
In her sole Assignment of Error, appellant argues that the officer's actions, under the facts presented, resulted in an unconstitutional search and seizure, and the trial court therefore erred in denying the motion to suppress. We disagree.
There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysiner, supra. In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in her motion to suppress. Thus, in analyzing this Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
Appellant essentially presents a dual challenge to the officer's actions. She first argues that the parking violation did not create a basis for the officer to detain and request identification from appellant and her passenger. She also contends that the officer nonetheless did not have reasonable suspicion or probable cause to effectuate the subsequent traffic stop down the road. We will address each contention in turn.
The United States Supreme Court has held that a police officer's request to examine a person's identification does not render an encounter nonconsensual. See Florida v. Bostick (1991), 501 U.S. 429, 435, citingImmigration Naturalization Serv. v. Delgado (1984), 466 U.S. 210, 216. As stated by the Ohio Supreme Court, "complete and honest cooperation with the law enforcement process by all citizens is essential to the effective operation of the justice system." State v. Lazzaro (1996),76 Ohio St.3d 261, quoting Columbus v. New (1982), 1 Ohio St.3d 221,227. Moreover, in the case sub judice, the record does not infer that the passenger was initially under any compulsion to respond to the request for identification, or that he answered involuntarily. Cf.Warrensville Hts. v. Mollick (1992), 79 Ohio App.3d 494. See, also,State v. Cooper (1989), 61 Ohio App.3d 344. More importantly, "[i]t is fundamental that a defendant must have standing to challenge the legality of a search or seizure." State v. Smith (1997), 117 Ohio App.3d 656,667, citing State v. Williams (1995), 73 Ohio St.3d 153, 166. At the early stage of the incident at issue, when the officer engaged in his interview with the passenger, we cannot conclude that appellant's own rights were implicated. "The Fourth Amendment right to be free from unreasonable searches and seizures cannot be vicariously asserted."State v. Steele (1981), 2 Ohio App.3d 105, 107. Accordingly, we find appellant at this point cannot maintain a challenge to the legality of the officer's encounter with and procurement of statements from the passenger. Cf. Smith, supra, at 667. Additionally, it is not necessary that we address the officer's request for identity information from appellant herself, as under the facts presented, no warrants were revealed and her questioning played no further role in the event.
We therefore shift our analysis to the subsequent stop of the vehicle. The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. Terryv. Ohio (1968), 392 U.S. 1; State v. Andrews (1991), 57 Ohio St.3d 86,87. Even without probable cause, a police officer may stop an individual and investigate unusual behavior when the officer reasonably concludes that the individual is engaged in criminal activity. Terry, supra. Terry
requires that before stopping an individual, the officer must have specific and articulable facts which, taken together with rational inferences from those facts, reasonably leads the officer to conclude that the individual is engaged in criminal activity. Id. at 21. TheTerry standard applies to the stop of a motor vehicle. See United Statesv. Brignoni-Ponce (1975), 422 U.S. 873; State v. Marbury (Sept. 21, 1992), Stark App. No. CA-8854, unreported. In the case sub judice, the officer's suspicions were raised when the passenger's second ultimately false recitation of his supposed SSN came back as "nothing on file." The officer testified as follows on this point during the suppression hearing:
 Q. Okay. Could you describe a little bit more what nothing in file means?
 A. It's either that the subject has never had a driver's license, never had any type of infraction, never had been identified through the State of Ohio. There's a lot of possibilities, but most of the time it is just a bad Social Security number, someone is giving you a false Social Security number.
Tr. at 12.
The prosecution argued at suppression that the passenger's responses raised an articulable, reasonable suspicion that the passenger had engaged in the crime of falsification, thus justifying the traffic stop. Indeed, the Ohio Supreme Court has held that the making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) (falsification) and 2921.31(A) (obstructing official business). State v. Lazzaro (1996),76 Ohio St.3d 261, syllabus. Here, the core offense was a parking violation, certainly far less than a serious crime. However, the officer was clearly acting within his duties to investigate an illegally-parked vehicle, and the events transpired directly in front of an alleged drug house, from which appellant and the passenger had just emerged, and which was specifically under observation based on numerous citizen complaints. Tr. at 6-7. In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved. State v.Bobo (1988), 37 Ohio St.3d 177, 180. We hold that the facts as presented at the suppression hearing would have reasonably led the officer to conclude that the passenger in appellant's vehicle was engaging in falsification.
Finally, appellant argues that the officer exceeded the scope of the purpose of the stop, i.e., further investigating the passenger's apparent falsification, by detaining her and the vehicle, even though she committed no driving offenses after departing the scene of the parking violation. In determining if an officer completed his tasks following a traffic stop within a reasonable length of time, a court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. See State v. Carlson (1985), 102 Ohio App.3d 585, 598, citing State v.Cook (1992), 65 Ohio St.3d 516, 521-522. In light of the facts before us, including appellant's own exacerbating action of reaching under the car's seat, as well as her consent to the search of the vehicle, we find no merit in this argument.
The trial court did not err in denying the suppression of evidence obtained via the traffic stop. Appellant's sole Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.
By: WISE, J., GWIN, P.J., and FARMER, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Costs to appellant.