OPINION
{¶ 1} Defendant-appellant Michelle Dickey appeals from her conviction and sentence, following a no-contest plea, upon one count of aggravated trafficking in *Page 2 
methamphetamine. Dickey contends that the trial court erred in denying her motion to suppress. Specifically, she contends that she had a reasonable expectation of privacy in certain telephone calls that were made to her by John Wymer, a jail inmate, despite the fact, which she acknowledges, that a recorded message made her aware that these calls might be monitored, and that the investigatory stop leading to the discovery of methamphetamine on her person was the fruit of this unlawful monitoring.
 {¶ 2} We agree with the State that Dickey had no reasonable expectation that her telephone conversations with Wymer would remain private. Therefore, we conclude that the trial court did not err in denying her motion to suppress. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The facts are not in dispute. The following recitation of the facts is excerpted from Dickey's brief.
 {¶ 4} In April, 2005, sheriff's deputies listening to outgoing calls of John Wymer, an inmate of the Randolph County, Indiana, jail, concluded that a drug transaction was imminent. At the beginning of every inmate-originated telephone call from the jail, a recorded voice informs the parties that the calls are subject to monitoring or recording. In fact, during at least one of the telephone conversations between Wymer and Dickey, the two can be heard laughing over the fact that when Dickey tells the recorded voice to "shut up," the recorded voice complies.
 {¶ 5} Based upon these phone calls, which were traced to Dickey, police officers learned that she would be making two methamphetamine "drops." On April 29, 2005, at about a quarter to one o'clock in the afternoon, police officers began following Dickey in an *Page 3 
unmarked car. They eventually learned, from the monitored phone calls, that she had methamphetamine in the car. The officers following Dickey attempted to arrange a traffic stop by a uniformed police crew, but ultimately made the stop themselves, after Dickey pulled off the highway onto a side street, and then in a driveway.
 {¶ 6} Dickey was initially advised that she was being stopped for a lane violation. (One of the officers testified that he had, in fact, observed Dickey cross the center line, almost causing an accident.) One officer saw a set of digital scales inside a Staple's bag on the floorboard of the vehicle.
 {¶ 7} The officers called for a drug-sniffing dog, but first had Dickey remove her own dog from the vehicle. The drug-sniffing dog alerted at the driver's side door, and at the trunk, but a search of the car revealed no drugs.
 {¶ 8} Following the dog's having alerted, the officers told Dickey that they were going to perform a weapons pat-down search, but she said she did not want to be searched in that manner by a male officer. One officer then noted a large bulge in one of Dickey's pockets, and asked her what it was. She answered: "It's the shit," and "It's the methamphetamine." She then removed a baggie containing a white substance from her pocket, and was arrested.
 {¶ 9} Following her indictment for drug trafficking, Dickey moved to suppress the evidence obtained at the scene of her arrest, contending that it was obtained as the result of the unlawful monitoring of her telephone conversations with Wymer. Following a hearing, the trial court denied Dickey's motion to suppress. Thereafter, she pled no contest, was found guilty, and was sentenced accordingly.
 {¶ 10} From her conviction and sentence, Dickey appeals. *Page 4 
 II {¶ 11} Dickey's sole assignment of error is as follows:
 {¶ 12} "THE EVIDENCE SHOULD HAVE BEEN ORDERED SUPPRESSED BECAUSE THE OFFICERS WHO MONITORED THE PHONE CALLS VIOLATED APPELLANT'S EXPECTATION OF PRIVACY IN THOSE CALLS, AND THUS THE OFFICERS VIOLATED THEFOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION."
 {¶ 13} Dickey forthrightly admits "that the evidence in this case showed that shortly after a call is initiated, a recording informs both the caller and the recipient that the calls may be monitored." (Emphasis in original.) Nevertheless, she contends that although it is reasonable to intrude upon a prisoner's privacy by monitoring outgoing telephone conversations, it is not reasonable to intrude upon the recipient's privacy in doing so. In this way, she attempts to distinguish a number of cases that hold that "the institutional interest in security outweighs the prisoner's privacy rights." United States v. Amen
(2nd Cir., 1987), 831 F.2d 373.
 {¶ 14} The underlying issue of the reasonable expectation of privacy, addressed in Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576, has been articulated as whether a particular expectation of privacy is "justified," balancing the interests of society in detecting and preventing crime against the interests of society in protecting individual privacy interests. LaFave, 1 Search and Seizure 440, § 2.1(d). That balance has been weighed in favor of monitoring outgoing telephone calls of jail inmates, in *Page 5 
the cases cited by Dickey.[1] We see no reason to distinguish the balance to be struck between the inmate's interest in the privacy of the conversation versus the interest in institutional security from the balance to be struck between the privacy interest of the outside participant in the conversation versus the interest in institutional security.
 {¶ 15} Dickey asserts that the State can have no legitimate interest in the outside participant's side of the conversation, since it is only interested in maintaining the security of the jail. But one of the cases cited by the State, State v. Wolfe (December 11, 2000), Madison App. No. CA-99-11-029, illustrates the fallacy of this proposition. InWolfe, the defendant was prosecuted for having assisted her boyfriend in escaping from the Madison Correctional Institution. The recorded telephone conversations at issue detailed her complicity in the escape. An institution charged with the confinement of individuals would have at least as much of an interest in monitoring an external threat to the security of the institution as in monitoring an internal threat, especially where the essence of the conversation being monitored is the coordination of the external and internal threats.
 {¶ 16} Parenthetically, in State v. Wolfe, supra, although inmates were advised that their outgoing telephone calls were subject to monitoring or recording, there was no similar advice to the external participants in those conversations. In the case before us, by contrast, a recorded voice informed both participants in the conversation that the call was subject to monitoring or recording.
 {¶ 17} Furthermore, as the trial court notes in its decision in the case before us, R.C. 2933.52(B)(3) exempts from prohibited wiretaps: *Page 6 
 {¶ 18} "A law enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is a party to the communication or if one of the parties to the communication has given prior consent to the interception by the officer."
 {¶ 19} We agree with the trial court that Wyman, if not Dickey, implicitly consented to the interception of his outgoing telephone calls because he made those calls after having been clearly advised that they were subject to monitoring and recording. This warning was posted about eight feet from the location where the telephone was hanging on the wall in the jail. See United States v. Lewis (7th Cir., 2005),406 F.3d 11, 2005 U.S. App. LEXIS 6611.
 {¶ 20} We conclude that a person who receives a telephone call from an inmate of a jail has no justified expectation of privacy in the ensuing telephone conversation, especially if there is a recorded voice advising both participants in the conversation that the call is subject to monitoring and recording. Dickey's sole assignment of error is overruled.
 III {¶ 21} Dickey's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and DONOVAN, JJ., concur.
[1] State v. Smith (1997), 117 Ohio App.3d 656, 691 N.E.2d 324;United States v. Van Poyck (9th Cir., 1996), 77 F.3d 285;United States v. Amen (2nd Cir., 1987),831 F.2d 373. *Page 1