[Cite as *In re C.C.*, 2026-Ohio-374.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: C.C.

:

:     C.A. No. 30542

:

:     Trial Court Case No. A-2025-001707-
:     01,02,03,0A

:

:     (Appeal from Common Pleas Court-
:     Juvenile Division)

:

:     **FINAL JUDGMENT ENTRY &**
        **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 6, 2026, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with the opinion.

Costs to be paid by the State.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS PRESIDING JUDGE

TUCKER, J., and HUFFMAN, J., concur.

ANDREW T. FRENCH, Attorney for Appellant
GARY C. SCHAENGOLD, Attorney for Appellee

LEWIS, J.

{¶ 1} The State of Ohio appeals from an order of the Juvenile Division of the Montgomery County Common Pleas Court that denied the State's request for access to audio recordings of telephone calls made or received by C.C. while he was detained in the Montgomery County Juvenile Detention Center. For the following reasons, we reverse the judgment of the trial court in part and affirm it in part, and remand this cause for further proceedings consistent with this opinion.

I.      Facts and Course of Proceedings

{¶ 2} On April 10, 2025, three individuals broke into AC Firearms in Kettering, Ohio, and stole multiple firearms. In the first two months after the break-in, law enforcement recovered several of the firearms, but many of the weapons remained at large in the community.

{¶ 3} On April 14, 2025, C.C. and two juvenile co-offenders were arrested based on an allegation that a firearm associated with the AC Firearms break-in was found in the home of one of the co-offenders. The next day, Dayton Police Officer Z. Scenters filed a complaint in the Juvenile Division of the Montgomery County Common Pleas Court alleging that C.C. received, retained, or disposed of a firearm of another and knew that the firearm had been obtained through commission of a theft offense. The allegations related to events that occurred on April 14, 2025. Officer Scenters also alleged that C.C. was 17 years old

2

at the time of the offense and appeared to be delinquent. C.C. was held in the Montgomery County Juvenile Detention Center for 75 days.

{¶ 4} On May 8, 2025, the assistant prosecuting attorney filed an amended complaint alleging that C.C. committed the following violations of the Revised Code: (1) knowingly discharging a firearm at or into an occupied structure; (2) knowingly acquiring, having, carrying, or using a firearm or dangerous ordnance while under disability; and (3) receiving, retaining, or disposing of an automobile of another with knowledge that the automobile had been obtained through commission of a theft offense. The three counts in the complaint contained firearm specifications and related to events that occurred around April 13, 2025.

{¶ 5} On May 15, 2025, the State filed a motion asking the trial court to order the Montgomery County Juvenile Detention Center to release any recorded phone calls made by and to C.C., "subject to an in-camera review by [the trial court] to exclude any phone calls protected by evidentiary privileges such as those between attorney and client, physician and patient, or clergy and penitent." In its motion, the State argued that the trial court should order the release of C.C.'s recorded phone calls because (1) the presence of stolen firearms in the community posed a substantial risk to public safety; (2) there was probable cause that C.C. had knowledge of the whereabouts of the stolen firearms; and (3) C.C. did not have a reasonable expectation of privacy in his phone calls placed at the detention center. Relating to whether C.C. had a reasonable expectation of privacy, the State noted that the detention center's written handbook stated that the calls were recorded, and a pre-recorded message at the beginning of each phone call advised C.C. that the calls were recorded.

{¶ 6} At the hearing on the State's motion, the State called one witness, Cassandra Burrell-Williams. She was the program manager at the juvenile detention center and supervised the general boys' population, facility support, and operations. She explained

that each youth received a copy of the facility's handbook when they were detained, and they attended lectures in their orientation units before they came to the general population. Burrell-Williams testified that the detained youths were permitted to make phone calls on Tuesdays and Fridays through the Pay Tel phone system. A prerecorded message was played before every phone call that alerted the detained youths that the phone call was being recorded. On cross-examination, Burrell-Williams agreed that the handbook contained a sentence that stated the recorded phone calls "will only be retrieved if we have reasonable suspicion of criminal activity or there is a threat to the security of the facility." Tr. 8. Burrell-Williams testified that as of the time of the hearing, there had been no reasonable suspicion of criminal activity to support the retrieval of C.C.'s recorded phone calls.

{¶ 7} At the conclusion of the testimony, C.C. argued that the State was engaging in nothing more than a fishing expedition to seek potentially incriminating evidence. According to C.C., the State had provided no evidence that amounted to reasonable suspicion of criminal activity and no evidence that retrieving C.C.'s private phone calls served any interest in public safety. If the trial court was inclined to grant the State's motion, C.C. asked the court to conduct an in-camera review of the phone calls and only release those that contained information that related to the interest in public safety and the location of any stolen firearms.

{¶ 8} The State argued that the case was about public safety and reasonable expectations of privacy. According to the State, there was no reasonable expectation of privacy in the phone calls because C.C. was informed at the beginning of each phone call that the call would be recorded. The State also contended that it provided sufficient evidence that C.C. was in the vicinity of other juveniles who were using firearms stolen from

4

the location where the firearms were still missing, which created a sufficient basis on which to retrieve the recorded phone calls.

**{¶ 9}** The trial court denied the State's motion. In its decision, the trial court noted, "While the juvenile does not argue that he has an expectation of privacy when it comes to his phone calls, he does argue that the State's request for the phone calls is not in accordance with the policy set forth in the Juvenile Detention Youth Handbook." Decision (June 13, 2025), p. 2. The trial court provided the following reasoning in support of its decision to overrule the State's motion for access to C.C.'s recorded phone calls:

> The Court finds that the State has not provided any argument that the juvenile was conducting criminal activity during his phone calls, or that there is a reasonable suspicion of criminal activity during the phone calls. The State argues that it has suspicion that the juvenile has knowledge of the whereabouts of the firearms, but has not demonstrated that that specific topic of conversation has occurred during the detention phone calls. The Court finds that the policy set forth in the Handbook lays specific grounds for when the juvenile's phone calls may be released, and without a reasonable suspicion of criminal activity during the phone calls, the Court finds the release of the phone calls to be improper.

*Id.* at 3. The trial court concluded, "The Court finds that although it is in the interest of public safety to determine the location of the stolen firearms, the State has failed to demonstrate that 1) the juvenile has knowledge of the whereabouts of the firearms, and that 2) there is reasonable suspicion that criminal activity is occurring during the juvenile's phone calls in detention." *Id.*

5

{¶ 10} On June 26, 2025, a status review hearing was held. During the hearing, an agreement was reached by the parties. Under the agreement, C.C. entered admissions to a misdemeanor assault charge, a misdemeanor making false alarms charge, and a felony having weapons while under disability charge. The trial court committed C.C. to the legal custody of the Department of Youth Services for a minimum period of 6 months and a maximum period not to exceed C.C.'s attainment of the age of 21. The court gave C.C. credit for the 75 days that he was detained at the juvenile detention center.

{¶ 11} Pursuant to App.R. 5(C) and R.C. 2945.67(A), the State filed a motion for leave to appeal the trial court's order that overruled the State's May 15, 2025 motion to release C.C.'s recorded phone calls. We granted the motion for leave to appeal and the parties filed their respective appellate briefs.

## II. Assignment of Error

{¶ 12} The State's sole assignment of error states:

Juveniles detained in the Montgomery County Juvenile Detention Center are made aware that their phone calls are recorded. By choosing to nevertheless make phone calls from the detention center, despite knowing the calls are being recorded, the juveniles forfeit any reasonable expectation of privacy in the call's content. The juvenile court abused its discretion and erred as a matter of law, therefore, by overruling the State's motion to release C.C.'s recorded detention center phone calls.

{¶ 13} Generally, we review a trial court's discovery rulings for abuse of discretion. *Hornbeck v. Hornbeck*, 2019-Ohio-2035, ¶ 92 (2d Dist.), citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). "A trial court abuses its discretion when it acts in

an unreasonable, arbitrary or unconscionable manner." *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989).

{¶ 14} The State sought access to recordings of phone calls made or received by C.C. while he was in the juvenile detention center. Monitoring and recording telephone conversations are a search within the meaning of the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 353 (1967). "In order for a party to succeed in challenging a search on Fourth Amendment grounds: (1) that party must have a subjective expectation of privacy in the object of the search, and (2) society must be prepared to recognize that expectation as reasonable." *Stone v. Stow*, 64 Ohio St.3d 156, 163-164 (1992), citing *Katz* at 361 and *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

{¶ 15} In the prison setting, federal and state courts have upheld the practice of monitoring inmate phone calls with "near unanimity." *State v. Smith*, 117 Ohio App.3d 656, 661 (8th Dist. 1997). One of the rationales applied by these courts in upholding the practice is that when a prisoner is placed on notice of telephone monitoring, the prisoner does not have the requisite subjective expectation of privacy to sustain a Fourth Amendment violation. *Id.*, citing *United States v. Van Poyck*, 77 F.3d 285, 290 (9th Cir. 1996), and *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987). Another rationale applied by some courts to uphold the monitoring of inmate phone calls is that an inmate implicitly consents to the monitoring where he has notice of the monitoring practice. *Id.* at 662, citing *United States v. Workman*, 80 F.3d 688 (2d Cir. 1996), and *United States v. Valencia*, 711 F. Supp. 608 (S.D.Fla. 1989). These two rationales from cases involving adult prisoners are equally applicable to the juvenile detention setting where juveniles are warned that their calls are being recorded. We see no reason to veer from this well-established caselaw applied in the adult prison setting unless detained youths can point to specific facts in the record that

7

clearly establish a reasonable expectation of privacy in their recorded phone calls despite the warnings they received prior to making the recorded phone calls.

{¶ 16} The record before us in this appeal establishes that there was a verbal warning at the beginning of each phone call alerting C.C. that his call was being recorded. There is also evidence in the record that each juvenile in the detention center was given a written handbook. Page six of the handbook contains the following statement in bold typeface immediately above a section entitled "GENERAL RULES": "**Note: Phone calls are made through the Paytel system. These phone calls are recorded. However, they will only be retrieved if we have reasonable suspicion of criminal activity or there is a threat to the security of the facility.**" (Emphasis in original.)

{¶ 17} There is no evidence in the record that C.C. read the statement in boldface type on page six in the handbook prior to making or receiving any phone calls at the detention center or that he had an expectation of privacy in his phone call as a result of reading that statement. At the same time, there was uncontradicted testimony presented at the hearing on the State's motion that the juveniles at the detention center were warned at the beginning of every phone call that their phone calls were being recorded. Importantly, C.C. did not argue that he had any expectation of privacy in his phone calls. Given the specific record before us, we see no reason to diverge from the well-established principle that a detainee does not have any expectation of privacy in phone calls after the detainee has been warned that the phone calls will be recorded.

{¶ 18} Notably, the trial court found that it was in the interest of public safety to locate the stolen firearms. Despite this, the trial court denied the State's request for discovery because the State failed to establish that there was a reasonable suspicion of criminal activity or there was a threat to the security of the detention center. While the detention

center's handbook stated that the detention center would only retrieve the phone calls if the detention center had a reasonable suspicion of criminal activity or if there was a threat to the security of the facility, the detention center's handbook does not set the outer limits of permissible discovery. Indeed, there is no evidence in our record that the State played any role in drafting the handbook or that it had agreed to follow the provisions of the handbook relating to the retrieval of recorded phone calls. Therefore, once the trial court found that C.C. had not raised any expectation of privacy in the phone calls and that it was in the interest of public safety to locate the stolen firearms, the trial court abused its discretion by denying the State's May 15, 2025 motion.

{¶ 19} The State's assignment of error is sustained.

### III. Conclusion

{¶ 20} Having sustained the State's assignment of error, we reverse the judgment of the trial court to the extent that it overruled the State's May 15, 2025 motion and remand this cause for further proceedings consistent with this opinion. The trial court's judgment is affirmed in all other respects.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.