**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Jeffrey Howard VAN POYCK,**
Defendant–Appellant.

No. 94–50318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided Feb. 20, 1996.

Benjamin A. Brin, Law Offices of Benjamin A. Brin, Los Angeles, California, for defendant-appellant.

Daniel P. Collins, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

---

Before: HALL and JOHN T. NOONAN, Jr., Circuit Judges, SHUBB, District Judge.*

Opinion by Judge HALL; Concurrence by Judge NOONAN.

CYNTHIA HOLCOMB HALL, Circuit Judge:

### I.

Jeffrey Van Poyck was suspected of robbing three San Bernardino and Riverside County banks in early 1993.[1] Through a series of superseding indictments, he was eventually charged with three counts of armed robbery in violation of 18 U.S.C. § 2113(a), (d) and one count of conspiracy to commit armed bank robbery under 18 U.S.C. § 371.

Van Poyck was originally arrested on Friday afternoon, May 21, 1993, by California state officers. On Monday morning, May 24, he was transferred to federal custody and made his initial appearance before a federal magistrate. On the way to his initial appearance, Van Poyck made several incriminating statements to the federal officer driving with him. No federal magistrates were available over the weekend to arraign him.

Upon his arrival at the Metropolitan Detention Center ("MDC") in Los Angeles on May 25, Van Poyck called a number of his friends and made more incriminating statements. MDC routinely tapes and selectively monitors all inmate telephone conversations. When Van Poyck first arrived at MDC, he was required to sign a form in which he consented to the routine monitoring and taping. Signs posted above the telephones read:

> The Bureau of Prisons reserves the authority to monitor conversations on the telephone. Your use of institutional telephones constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored.

---

* The Honorable William B. Shubb, United States District Court Judge for the Eastern District of California, sitting by designation.

1. Specifically, he was suspected of robbing the Inland Empire National Bank in Riverside, California on both January 8, 1993, and February 1, 1993, and of robbing the Community Bank in Redlands, California on April 29, 1993.

Van Poyck proceeded to trial on February 2, 1994, and was convicted of two counts of armed robbery and one count of conspiracy. He was sentenced to 327 months of incarceration.

Van Poyck appeals the district court's denial of his motions: (1) to suppress his May 24 statements because the government violated Federal Rule of Criminal Procedure 5(a); and (2) to suppress the telephone conversations recorded by the MDC as obtained in violation of the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510.[2] We affirm his convictions.

## II.

■ Van Poyck claims that the statements he made on May 24 should be excluded because they were a result of pre-arraignment delay.

■ Federal Rule of Criminal Procedure 5(a) requires "[a]n officer making an arrest under a warrant ... [to] take the arrested person without unnecessary delay before the nearest available federal magistrate judge ..." Fed.R.Crim.P. 5(a). Courts look to 18 U.S.C. § 3501(c) to determine whether pre-arraignment statements obtained in violation of Rule 5(a) are admissible. *United States v. Manuel*, 706 F.2d 908, 912–13 (9th Cir.1983) ("Section 3501 was intended to supersede the *McNabb–Mallory* rule as the source of federal supervisory power to suppress confessions obtained in violation of Federal Rule 5(a).") (citation omitted). The defendant bears the burden of proving grounds for exclusion. *United States v. Halbert*, 436 F.2d 1226, 1230 (9th Cir.1970).

■ 18 U.S.C. § 3501(c) provides, in relevant part:

> In any criminal prosecution by the United States ... a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-en-

forcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate .... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c) (emphasis original). This Circuit has concluded that the "clear effect of this provision is to create a six-hour 'safe harbor' during which a confession will not be excludable [solely because of delay]." *United States v. Alvarez–Sanchez*, 975 F.2d 1396, 1399 (9th Cir.1992), *rev'd on other grounds*, —— U.S. ——, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994).[3] This "safe harbor" extends beyond the six hour mark if the delay is reasonable and is due to "the means of transportation and the distance to be traveled to the nearest available magistrate ..." *Id.* at 1399–1400 & 1404 n. 6.

■ Statements made outside the six-hour "safe harbor" may be excluded solely for delay, but a court is not obligated to do so. *Alvarez–Sanchez*, 975 F.2d at 1401; *Manuel*, 706 F.2d at 913 ("Where the delay is longer than six hours ... a confession is not inadmissible per se."); *Halbert*, 436 F.2d at 1232 ("[O]n its face subsection 3501(c) provides only that *some confessions shall be admitted. It does not explicitly provide that all other confessions shall not be admissible*.") (emphasis original).

This Circuit has identified two ways to decide whether to admit such a non-"safe

---

2. We have disposed of Van Poyck's other claims in an unpublished memorandum disposition.

3. The court noted, however, that reaching this conclusion was not simple because "the text of

§ 3501 is confusing and has given rise to uncertainty and disagreements among the circuits ..." *Alvarez–Sanchez*, 975 F.2d at 1399.

harbor" statement. *See Alvarez–Sanchez,* 975 F.2d at 1404. In one line of cases, we have looked to the reasonableness of the delay; if it is reasonable, the statement is admissible. *See Manuel,* 706 F.2d at 913. In another line, we have looked to public policy concerns such as discouraging officers from unnecessarily delaying arraignments, preventing admission of involuntary confessions, and encouraging early processing of defendants; if public policy favors admission, the statement is admissible.[4] *See United States v. Wilson,* 838 F.2d 1081, 1087 (9th Cir.1988).

Van Poyck's statements, which fall outside § 3501(c)'s "safe harbor," are admissible under either standard.[5] Under the first test, the delay is reasonable. This Circuit has intimated on many occasions that overnight delays are reasonable. *See United States v. Fouche,* 776 F.2d 1398 (9th Cir.1985) (refusing to conclude that overnight portion of a 20–hour delay made the delay in arraignment unreasonable); *Wilson,* 838 F.2d 1081 (same); *Alvarez–Sanchez,* 975 F.2d at 1405 (reserving issue of whether overnight delays were reasonable); *cf. Manuel,* 706 F.2d at 908 (finding overnight delay reasonable); *United States v. Jernigan,* 582 F.2d 1211, 1214 (9th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978) (affirming conviction even though the police officer, by intentionally arresting defendant on Friday so defendant would remain in jail over a long weekend, violated Federal Rule of Criminal Procedure 9(c)(1)'s mandate to bring a defendant quickly before a magistrate).

Other Circuits have explicitly found weekend delays reasonable when due to the unavailability of a magistrate. *See United States v. Mendoza,* 473 F.2d 697, 702 (5th Cir.1973) (finding delay between Saturday morning arraignment and Monday morning arrest reasonable); *Gregory v. United States,* 364 F.2d 210, 212 (10th Cir.), *cert. denied,* 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307 (1966) (finding delay between Friday night arrest and Monday morning arraignment reasonable); *United States v. Collins,* 349 F.2d 296, 298 (6th Cir.1965) (same).

■ The result reached in all these cases is dictated by the complex procedures needed to arraign a defendant. An arraignment requires court personnel to randomly select a judge, requires pretrial services to process the defendant, and often requires an interpreter; this is simply not a task that can be performed in a magistrate's living room.[6] We therefore now explicitly hold what has been implicitly understood all along: An overnight or weekend delay in arraignment due to the unavailability of a magistrate does not by itself render the delay unreasonable under § 3501(c).

■ The same concerns which underlie our holding persuade us to reject the argument that the alternative arraignment procedures set forth in Rule 5(a) render a weekend delay unreasonable. Rule 5(a) provides that the person to be arraigned should be taken "before a state or local judicial officer authorized by 18 U.S.C. § 3041" if a magistrate judge is "not reasonably available." Fed.R.Crim.P. 5(a). In his concurrence, Judge Noonan seems to concede that a federal magistrate judge may not be reasonably available over the weekend, *see infra* at 293; by insisting that a defendant be arraigned by state or local judicial officers over such a

---

**4.** Although we have previously noted the two lines of cases, we have also observed that this "conflict may be more apparent than real." *Alvarez–Sanchez,* 975 F.2d at 1404.

**5.** Because "pre-arraignment delay caused by local and federal officials should be considered cumulatively under section 3501(c)," *United States v. Fouche,* 776 F.2d 1398, 1406 (9th Cir. 1985) (citation omitted), the fact that Van Poyck was arrested by state officers on Friday afternoon and transferred to federal custody on Monday morning does not affect our analysis.

**6.** This distinguishes this situation from the determination of probable cause which must be made within 48 hours (including weekends) of a warrantless arrest under *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 1669, 114 L.Ed.2d 49 (1991). Such probable cause determinations can be made solely on the basis of written affidavits and do not require the services of any personnel beyond the judicial officer. Moreover, the concerns that animated the *McLaughlin* decision—the special harm of detaining a person without a prior determination of whether detention is supported by probable cause—are not implicated in this case because Van Poyck was arrested pursuant to a warrant.

weekend, however, he suggests that these other ·officers *are* so available. It seems logical to assume that the purpose of any alternative arraignment provision would only be achieved if the government provided a defendant the *same type* of arraignment before a state or local judicial officer as would be provided a federal magistrate. State and local judges are just as likely to be unavailable for arraignments on nights and weekends as a federal magistrate judge.[7] With that in mind, we do not believe that this provision of Rule 5(a) requires that the defendant be brought before either a federal magistrate *or* a state or local judicial officer at night or on the weekend.[8]

■ Van Poyck's statements are admissible under the second test as well because public policy does not require their suppression. This is not a case where the officers intentionally postponed arraignment so they could interrogate the defendant. *See Fouche,* 776 F.2d 1398; *Wilson,* 838 F.2d 1081; *Alvarez–Sanchez,* 975 F.2d at 1405–06. The officers transported Van Poyck to a magistrate early Monday morning; Van Poyck's statements were made en route. Thus, the officers in this case did not unnecessarily delay Van Poyck's arraignment. Because the officers acted properly, no public policy would be advanced by excluding Van Poyck's statements.

Van Poyck has not satisfied his burden of proof and his statements were properly admitted.

### III.

Van Poyck next claims that the government violated the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 by recording the telephone conversations he made while a prisoner at MDC.

### A.

■ Van Poyck first challenges MDC's recording policy under the Fourth Amendment. The Government argues that the recordings are constitutionally valid for three independent reasons: (1) the Fourth Amendment is not implicated because Van Poyck had neither a subjective nor objective expectation of privacy in his calls; (2) even if he did, the prison system's interest in institutional security makes such recordings reasonable; and (3) Van Poyck consented to the taping. We review the validity of a warrantless search de novo. *United States v. Ogbuehi,* 18 F.3d 807, 812 (9th Cir.1994).

■ The Fourth Amendment is not triggered unless the state intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.'" *New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986) (citing *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Such a "constitutionally protected reasonable expectation of privacy" exists only if (1) the defendant has an "actual subjective expectation of privacy" in the place searched and (2) society is objectively prepared to recognize that expectation. *United States v. Davis,* 932 F.2d 752, 756 (9th Cir.1991).

Neither expectation exists in this situation. Although Van Poyck claims he had a subjective expectation of privacy in the calls, the district court concluded that Van Poyck knew of MDC's policy before he made his first phone call on May 25. If he knew MDC was listening, it is hard to believe he thought his calls were private.

■ Even if Van Poyck believed that his calls were private, no prisoner should reason-

---

7. It seems much more likely that this provision was inserted to address occasions when the only magistrates in the district are ill or out of the district. If this happened, an equivalent arraignment could be made by a state or local judicial officer pursuant to § 3041, but even that would almost certainly need to be performed during normal court hours.

8. Nor are we persuaded that our holding today will open up the Pandora's Box Judge Noonan fears and leave the federal courts powerless to exclude statements made after four-, five-, or even six-day delays before arraignment. Van Poyck was only held without arraignment over a two-day weekend; our holding does not address whether a magistrate who is actually unavailable for longer periods is or is not "reasonably available" for the purposes of Rule 5.

ably expect privacy in his outbound telephone calls.[9] Although prisoners do not forfeit all their privacy rights at the jailhouse steps, *Franklin v. Oregon,* 662 F.2d 1337, 1347 (9th Cir.1981) ("[A] prisoner does not lose all rights to privacy."), they do have those rights severely curtailed.[10] *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (finding that a prisoner had no reasonable expectation of privacy in his prison cell); *Lanza v. New York,* 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) (finding that prisoner had no reasonable expectation of privacy in public jail visiting rooms); *United States v. Hitchcock,* 467 F.2d 1107 (9th Cir.1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973) (finding that prisoner had no reasonable expectation of privacy in his cell).

■ In *United States v. Hearst,* 563 F.2d 1331 (9th Cir.1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978), we rejected an inmate's Fourth Amendment challenge to the routine taping of telephone conversations on the grounds that such taping was reasonable; we never explicitly addressed whether Hearst had a reasonable expectation of privacy in those calls. Given the result in *Hearst,* however, and the weight of other authority, we now answer the issue *Hearst* left open: We hold that any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls.

■ Assuming that the Fourth Amendment were triggered, institutional security concerns justify such recordings and render them reasonable for Fourth Amendment purposes. *See, e.g., United States v. Amen,* 831 F.2d 373, 379 (2d Cir.1987), *cert. denied sub nom. Abbamonte v. United States,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988) (upholding routine recordings of prison phones because of institutional security concerns); *United States v. Willoughby,* 860 F.2d 15 (2d Cir.1988), *cert. denied,* 488 U.S.

1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989) (same); *Hearst,* 563 F.2d at 1346 (same).

■ We further conclude that Van Poyck consented to the taping of these phone calls. The district court concluded that Van Poyck consented to the recordings because he (1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings. Because consent vitiates a Fourth Amendment claim, Van Poyck's Fourth Amendment claim independently fails on this ground. *See United States v. Morales,* 972 F.2d 1007, 1010 (9th Cir.1992), *cert. denied,* 507 U.S. 1012, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993) ("Lawful searches may be undertaken ... with the consent of the defendant.").

### B.

■ Van Poyck also challenges the MDC's taping policy under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510. We review de novo issues of law, including the proper application and construction of a statute. *Twenty–Three Nineteen Creekside, Inc. v. Commissioner,* 59 F.3d 130, 131 (9th Cir. 1995).

Title III forbids the intentional use of any "electronic, mechanical, or other device to intercept any oral communication." 18 U.S.C. § 2511(1)(b). Because Title III applies to the prison system, *see Amen,* 831 F.2d 373, MDC's routine taping policy would at first blush seem to violate Title III.

We conclude, however, that two exceptions to Title III apply in this context. The first is the "law enforcement" exception. Under this exception, oral communications may be intercepted by investigative and law enforcement officers acting in the ordinary course of their duties. *See* 18 U.S.C. § 2510(5)(a) (excluding from the definition of "electronic, mechanical, or other device" "any telephone or telegraph instrument, equipment or facility, or any component thereof ... being used by ... an

---

9. This analysis does not apply to "properly placed" telephone calls between a defendant and his attorney, which the MDC does not record or monitor.

10. The extent of curtailment for pretrial detainees is the same as for convicted inmates. *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

investigative or law enforcement officer in the ordinary course of his duties.").

MDC is a law enforcement agency whose employees tape all outbound inmate telephone calls; interception of these calls would appear to be in the ordinary course of their duties. Other Circuits have so held. *See, e.g., United States v. Paul,* 614 F.2d 115, 117 (6th Cir.), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980); *United States v. Feekes,* 879 F.2d 1562, 1565–66 (7th Cir.1989). We agree with these other Circuits and therefore conclude that the law enforcement exception applies in this Circuit to MDC's routine taping policy.

▇▇▇▇ A second exception, consent, also applies to Van Poyck. When one party consents to a tap, Title III is not violated. 18 U.S.C. § 2511(2)(c). Consent may be express or may be implied in fact from "surrounding circumstances indicating that the [defendant] knowingly agreed to the surveillance." *Amen,* 831 F.2d at 378; *Griggs–Ryan v. Smith,* 904 F.2d 112, 116–17 (1st Cir.1990).

In *Amen,* the Second Circuit examined whether a prisoner had impliedly consented to the recordings of his phone conversations. It observed that the prisoner: (1) had attended a lecture discussing the taping procedure; (2) had been given a copy of the Inmate Information Handbook discussing the procedure; (3) had seen notices posted on the telephones; and (4) had signed a form consenting to the procedure. The court found consent. *Amen,* 831 F.2d at 379.

Van Poyck's situation is nearly identical. MDC posted signs above the phones warning of the monitoring and taping. Furthermore, Van Poyck signed a consent form and was also given a prison manual a few days after his arrival.[11] As with the prisoner in *Amen,* these facts indicate that Van Poyck impliedly consented to the taping of his phone calls; Title III was not therefore violated.

For the foregoing reasons, we AFFIRM.

11. Although Van Poyck claimed that he did not read or understand the consent form when he signed it, and claimed to have signed it two days after he had made the calls in which he incriminated himself, the district court disbelieved his testimony. Determinations of credibility are giv-

NOONAN, Circuit Judge, concurring:

I concur in the opinion of the court except as to the failure to arraign Van Poyck promptly.

The relevant statute lists a variety of officers before whom he could have been arraigned. The statute reads:

> For any offense against the United States, the offender may, by any justice or judge of the United States, or by any United States magistrate, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found ... be arrested and imprisoned ... 18 U.S.C. § 3041.

If arraignment is no longer a simple task, as the court suggests, then the statute should be altered; but its alteration is not our job. The statute is premised on the ability of each of the named officers to make an arraignment.

Federal Rule of Criminal Procedure 5(a) is premised on the statute. It reads:

> (a) In General. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or, in the event that a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

Van Poyck was arrested at 4:00 p.m. on a Friday afternoon. The arrest was made by local police, executing a federal warrant. It is reasonable to suppose that a federal magistrate or some other judicial officer was available all of Friday afternoon, unless one supposes that all such officers begin the weekend a little early.

en "great deference," *United States v. Williams,* 978 F.2d 1133, 1135 (9th Cir.1992), *cert. denied,* 507 U.S. 994, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993) (citing *United States v. Sealey,* 830 F.2d 1028, 1032 (9th Cir.1987)), and we will not disturb this assessment.

It will be noted that "reasonably" only qualifies the availability of the federal magistrate. Rule 5(a) makes no such allowance for the convenience of the other judicial officers provided by 18 U.S.C. § 3041. Even if a federal magistrate may "reasonably" be unavailable on a Friday afternoon, no such slack is cut for the other officers.

The court suggests that the "complex procedures" of arraignment somehow "dictate[s]" the conclusion that weekend delays between arrest and arraignment are reasonable "when due to the unavailability of a magistrate." Although it is true that arraignment cannot be performed in a magistrate's living room, nothing is so complex about an arraignment that it can't be performed in federal court on a Friday afternoon following an arrest of a federal suspect pursuant to a warrant. With the issuance of a warrant, law enforcement should be able to foresee any scheduling difficulties posed by the weekend and plan accordingly. Moreover, it is not inconceivable that courts could conduct such arraignments on Saturday mornings, a practice common in at least one other circuit, *see, e.g., United States v. Rubio,* 709 F.2d 146, 148 n. 2 (2d Cir.1983), and not unheard of in Los Angeles, *see, e.g., Man Charged in Airline Extortion Try,* LA Times, Jan. 16, 1994, at B3 (federal suspect in airline extortion case was arrested on a Friday night in Los Angeles and then arraigned on a Saturday), or elsewhere in our circuit, *see, e.g.,* Tony Perry & Carlos Lozano, *Colbern Arraigned on U.S. Weapons Charges Blast Probe,* L.A. Times, May 14, 1995, at A1 (federal suspect in Oklahoma City bombing, who was arrested on a Friday, was arraigned on Saturday in Arizona before a federal magistrate judge). Although Saturday morning arraignments may not be standard practice in California, such a prospect is permitted under California law. *See* Cal.Civil Proc.Code § 134(a)(3) (West 1995).

Such a practice was also implied by the Supreme Court in its ruling that the combined proceedings in Riverside County, California, involving an arraignment and probable cause determination must occur within 48 hours of arrest, regardless of an intervening weekend, for suspects arrested without a warrant. *County of Riverside v. McLaughlin,* 500 U.S. 44, 57, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991). The Court held that detaining a person without a warrant and without a probable cause determination for more than 48 hours was presumptively unreasonable. *Id.* The Court instructed jurisdictions with proceedings that combine arraignment with the probable cause determination to hold such proceedings within 48 hours of arrest, weekends included. *Id.* Although established to govern probable cause determinations, the 48–hour presumption provides a good benchmark by which to evaluate the reasonableness of any delay in bringing a defendant before a magistrate for arraignment. In either context, "delay for delay's sake" is unreasonable, even on weekends. *Id.* at 56, 111 S.Ct. at 1670.

The rule established by the court means that no arraignment need be made before Monday of a person arrested sometime Friday afternoon. If, as often enough happens, Monday is a holiday, the court's rule invites delaying the arraignment to Tuesday. The rule also invites arrests on Friday afternoon and, even worse, arrests before holiday weekends when a person arrested may be held from 4 p.m. Friday to 9 a.m. Tuesday or 89 hours without arraignment. By implication, the court's rule might make reasonable even a 5–day delay before arraignment of a person arrested the Wednesday afternoon before Thanksgiving or before Christmas and the Fourth of July when these dates fall on a Thursday. *Compare* the Supreme Court's discussion of the possible delay in *id.* at 47, 111 S.Ct. at 1665.

In my view, the delay in arraignment was not reasonable, so the court's first ground for admitting Van Poyck's statement does not survive scrutiny. Whether public policy favors admission is a closer question. I can't say that this court and the district court were in error in striking the balance in favor of admissibility. Van Poyck has not shown that law enforcement officials deliberately delayed his arraignment to facilitate interrogation or that he did not understand the *Miranda* warnings that the federal agent gave to him in the car en route to the arraignment. Under these circumstances, 18 U.S.C. § 3051

does not bar admission of Van Poyck's statements.