**UNITED STATES of America**

v.

**Thomas HARRISON, Defendant.**

No. 4:CR–97–0195–05.

United States District Court,
M.D. Pennsylvania.

Dec. 8, 1997.

George J. Rocktashel, Assistant United States Attorney, Williamsport, PA, for the Government.

James A. Zurick, Shamokin, PA, for Defendant.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On August 20, 1997, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendant Thomas Harrison, along with co-defendants Janet E. Bifield, Daniel Bifield, Beverley Davis, William McDermott, Robert L. Sizemore, and Barry Spell with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Succinctly stated, defendants are alleged to have filed state tax returns in California and Ohio, received refund checks, and deposited the money into bank accounts or otherwise distributed the proceeds. Also alleged to have participated in the scheme are inmates at the United States Penitentiary at Allenwood, Union County, Pennsylvania. The indictment also sets forth a forfeiture count.

Jury selection currently is scheduled for February 2, 1998, with trial to commence as soon as feasible thereafter.

Before the court is a motion by Thomas Harrison to suppress evidence of telephone conversations between himself and Anthony Pfeffer while Pfeffer was an inmate at USP–Allenwood.

### *DISCUSSION:*

Harrison moves to suppress the tapes under the Fourth Amendment. The Fourth Amendment is implicated when the defendant manifests a subjective expectation of privacy which society would accept as reasonable. *California v. Greenwood,* 486 U.S. 35, 40, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988). Courts have been consistent in holding that an inmate does not have an objectively reasonable privacy interest in outbound telephone calls. *See United States v. Van Poyck,* 77 F.3d 285, 290–291 (9th Cir. 1996). In this instance, however, we are presented with the obverse question: whether a person on the receiving end of a telephone call from an inmate has an objectively

reasonable expectation of privacy in the phone call.

We first note that the content of the telephone calls indicates that Harrison knew that he was speaking to an inmate. *See* Exhibit A to Government's Brief in Opposition to Harrison's Motion to Suppress (transcripts of telephone calls) at 1002 (Pfeffer discussing what he will be doing after coming out or getting out); at 1003 (Harrison and Pfeffer discussing increased security with respect to mail due to events in the "Unabomber" case); at 1012 (discussing warning signal for the expiration of time on the telephone); at 1018–1020 (discussing an attempt by a well-known inmate to escape, including the institutions at which he was incarcerated, and Pfeffer's familiarity with him); at 1021 (discussing chess as a good game "in here"); at 1024 (Pfeffer stating that ice cream is a treat "in here for us", Harrison responding that price was the same as "out here"); at 1030–1032 (discussing conditions under which Pfeffer lived, including a question from Harrison about "Marion," and concluding with a statement by Pfeffer, "Yeah, jailing, trying to make the best of jailing."); at 1044 (discussing "rats" in jail, with Pfeffer referring to "in here"). Based on these few instances (there are many more), we think it evident that Harrison knew that he was speaking to an inmate.

The primary question, then, is whether society would consider it reasonable for Harrison to have an expectation of privacy in telephone calls from a prison. We conclude that it would not.

In *Van Poyck*, the defendant claimed that recordings of telephone conversations from a federal detention center violated his rights under the Fourth Amendment. The Ninth Circuit first reiterated the district court's finding that the defendant knew calls were monitored and so had no subjective expectation of privacy. 77 F.3d at 290. Even if the defendant had a subjective expectation of privacy, institutional security concerns render recording of outbound telephone calls reasonable. 77 F.3d at 291 (citing "weight of other authority"). Finally, given the fact that the defendant had been made aware of the recording and used the telephone regardless, he consented to the recording. Id.

In *Angel v. Williams*, 12 F.3d 786 (8th Cir.1993), police officers had been terminated from their employment for using excessive force on a prisoner. A tape recording of the incident was played during an administrative proceeding, after which the officers filed a civil complaint alleging that the taping violated the federal wiretap law, 18 U.S.C. §§ 2510–2521, and brought a claim under, *inter alia*, 18 U.S.C. § 2520. The Eighth Circuit concluded that, while it appeared that the officers had a subjective expectation of privacy in their communication, the expectation was not objectively reasonable. 12 F.3d at 790. "The singular purpose of a jail is the confinement of known or suspected criminals, and it is more than reasonable to expect that communications made therein between police officers and prisoners would be intercepted." *Id.*

The government sets forth the three reasons recited in *Van Poyck* for finding the tapes admissible, and we agree.

First, the tapes reflect guarded language on the part of Harrison. For example, Harrison and Pfeffer discuss an incident involving a "pay back" and avoid using last names. Exhibit A at 1041–1043. *See esp.* id. at 1041 (after being asked a last name, Harrison replies, "Yea, I don't want to say it."). Also, in discussing the sending of magazines to Pfeffer, the two refer only to a letter with directions on how to do so. Id. at 1063. The discussions therefore indicate that Harrison did not have a subjective expectation of privacy in the calls.

As to the objective prong of the test, the recording of outbound calls from a prison is reasonable given institutional security concerns. There is, of course, the risk of escape plans. Also, not surprisingly, criminal conduct does not always end when the prison gate closes behind a convict, and available avenues often are used to facilitate further criminal activity. In fact, this court has seen a number of instances in which prison telephones were used to commit crimes and the recordings of calls used as evidence. *See, e .g., United States v. Balboa*, No. 4:CR–94–0310 (inmate conducting fraudulent financial

transactions used telephone to direct codefendants); *United States v. Elich,* No. 4:CR–94–0188 (inmates used telephone to direct confederates outside the prison with respect to sending drugs into prison through legal mail).[1]

Finally, as noted, Harrison knew that he was talking to an inmate and appears to have been aware that calls were likely to be monitored. Despite this, he spoke to Pfeffer on numerous occasions. As the Ninth Circuit pointed out in *Van Poyck,* such conduct constitutes consent to the monitoring.

Turning to the more general principle as enunciated by the Eighth Circuit in *Angel,* the "singular purpose" of any prison is to confine known or suspected criminals. It is hardly reasonable for a non-inmate to expect unrestricted access or communication with persons confined in such an institution.

For all of these reasons, Harrison's motion to suppress will be denied. An appropriate order will issue.

---

1. In another case, an inmate and his wife were acquitted of charges related to an escape conspiracy after contending that they actually were intending to scam another inmate who was purportedly financing the escape. *United States v. Gambina,* No. 4:CR–92–0093. Whether viewed as conspiracy to escape or conspiracy to defraud, the conduct was unlawful and involved extensive use of the telephones.