**UNITED STATES of America,**
**Plaintiff,**

v.

**Reynaldo SALIVAS–GONZALEZ,**
**Defendant.**

**No. CR. 01–327(JAF).**

United States District Court,
D. Puerto Rico.

June 1, 2001.

---

Jorge E. Vega–Pacheco, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for U.S. Attorneys.

Wilma E. Reveron–Collazo, San Juan, PR, Pedro J. Varela–Fernandez, Cayey, PR, for Reynaldo Salivas–Gonzalez (1), defendant.

### MEMORANDUM ORDER

FUSTE, District Judge.

The court addresses the defendant's "Motion to Vacate the Sentence; to Dismiss the Information; to Suppress Photographs and Fingerprints Obtained from Defendants Upon Their Arrest; to Suppress Testimony of Government Witness; for not Presenting Defendants Before a Judicial Officer Within a Reasonable Time [for processing, in violation of Fed. R.Crim.P. 5], and from the Denial of Presenting the Defense of Necessity and Authorities in Support," filed on May 29, 2001, *Docket Document No. 13.*

The court addresses the Fed.R.Crim.P. 5 motion to dismiss and notes that the other requests and alleged grounds for dismissal were either addressed at or before trial or must necessarily be denied by virtue of the findings made here today.

 Pursuant to Fed.R.Crim.P. 5(a), an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041. Fed. R.Crim.P. 5(a); *see also United States v. Alvarez–Sánchez,* 511 U.S. 350, 357, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *County of Riverside v. McLaughlin,* 500 U.S.

44, 57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Rule 5(a) does not provide for a time limitation for a defendant to be brought before the court. Unnecessary delay, however, is to be determined in light of all the facts and circumstances of the case. (*See* Fed.R.Crim.P. 5(a) Advisory Committee notes.) Rule 5(a) does not require that a defendant be brought before either a federal magistrate or a state or local judicial officer at night or on the weekend. *United States v. Van Poyck,* 77 F.3d 285, 290 (9th Cir.1996).

■ Conversely, the Fourth Amendment requires a prompt judicial determination of probable cause (to arrest) as a prerequisite to extended detention following a warrantless arrest. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Supreme Court has established "prompt" for a probable cause hearing as generally the term within forty-eight hours of the warrantless arrest. *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Absent extraordinary circumstances (and intervening weekends do not qualify as such), a longer delay presumptively violates the Fourth Amendment. *Id.* at 57, 111 S.Ct. 1661. The First Circuit has acknowledged that, "while the Rule 5(a) and Fourth Amendment contexts are certainly 'analogous,' *Anderson v. Calderón,* 232 F.3d 1053, 1104 (9th Cir.2000) (McKeon, J., dissenting), the 48–hour rule is a requirement of the Fourth Amendment, not Rule 5(a)". *United States v. Encarnación,* 239 F.3d 395, 398 n. 2 (1st Cir.2001) (citing *McLaughlin,* 500 U.S. at 56, 111 S.Ct. 1661). Also worth noting is that very recently the United States Supreme Court has addressed the applicability of Fourth Amendment rights in misdemeanor cases. *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (if an officer has probable cause to believe than an individual has committed even a very minor criminal offense [misdemeanor] in his presence, he may, without violating the Fourth Amendment, arrest the offender). There, the Court reiterated the principal that "anyone arrested for a crime without formal process, whether for felony or misdemeanor, is entitled to a magistrates's review of probable cause within 48 hours...." *Id.* (publication pages unavailable).

■ Based on the foregoing, it can be reasonably concluded that Rule 5(a) is applicable to either felony or misdemeanor cases. Accordingly, whenever it is alleged that an arrestee was not taken before a judicial officer within the 48–hour period, it must be determined whether the delay, if any, in presenting the arrestees before a judicial officer was unnecessary in light of all the surrounding circumstances.

Initially, it should be noted that the Local Rules for the United States District Court for the District of Puerto Rico provide that "[t]he Court shall be in continuous session in the City of San Juan for transacting judicial business on all *business days* throughout the year, unless adjourned by the Court." Local Rule 106. Hence, it is obvious from the Local Rules that the U.S. District Court for the District of Puerto Rico is not open for business on weekends and, consequently, no court personnel is available to physically process persons arrested over the weekend (except juveniles charged with delinquency). Nonetheless, subsequent to a warrantless arrest in felony cases, once the prosecutor authorizes the filing of a complaint and the prosecuting documents are prepared, said documents are reviewed by a judicial officer and probable cause to arrest is determined within the 48–hour period. The initial appearance of the defendant is normally conducted on the next working date.

■■ With regard to a probable cause finding, there is no dispute that the arrestees are to be brought before a judge within forty-eight hours of a warrantless arrest. In the last batch of Vieques cases, the informations were filed commencing on Monday, April 30 through May 2, 2001.[1] Therefore, only those individuals arrested on Friday, April 27, 2001, and who were not seen by a magistrate judge until Monday, may have a valid argument that they did not receive a probable cause hearing within the requisite time period.[2] Once the 48–hour mark passes, it is the government's burden to demonstrate that the delay was reasonable due to a bona-fide emergency or other extraordinary circumstance. *United States v. Forde*, No. 93–1322, 1994 WL 390143 (1st Cir.1994) (unpublished opinion) (citing *County of Riverside v. McLaughlin*, 500 U.S. at 57, 111 S.Ct. 1661). Then, it is up to the court to determine what remedy, if any, is appropriate. However, "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." Id. at *3 (quoting *United States v. Montalvo–Murillo*, 495 U.S. 711, 717, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990)). Nonetheless, the court will have to determine whether exigent circumstances existed making any delay an excusable one and what will be, if any, the remedy to be afforded.

■ It is clear that Fed.R.Crim.P. 5(a) places on the arresting agency the obligation of taking "the arrested person without unnecessary delay before the nearest available" judicial officer and that under the law any delay in taking such action, for a period in excess of forty-eight hours, must be scrutinized and the extraordinary circumstances that existed, if any, must be identified by the government.

The first item to be noted is that in the Vieques trespassing cases we are dealing with two different time frames: The time in which the defendants were actually detained by military personnel at Camp García in Vieques, and the time in which the arrestees were actually delivered to civil authorities, represented by the U.S. Marshals, for transportation and court processing in San Juan.[3] Attached, under *Exhibit A,*■ is a working list contemporaneously prepared by Magistrate Judge Aida Delgado with the dates in which all offenders were arrested by the U.S. Navy personnel. *Exhibit B*■ contains the names of all arrestees and the dates in which they were incarcerated at MDC–Guaynabo.[4]

Second, in evaluating whether "exigent circumstances" existed justifying a delay, it is of importance that the arrestees were first administratively detained and their processing was first made by the Navy. Many individuals were detained by the Navy while they were in the live impact zone, located in an isolated spot within a closed Navy facility in Vieques, Puerto Rico, and which entailed a 45–minute ride

1. The Information in the specific case of defendant Salivas–González was filed on May 2, 2001.

2. Reportedly, this is a group of nine individuals who have been identified as: Raúl Quiñones, Carlos Santiago, Raúl Mulero, Carlos Aguirre, José Molina, Angel Carmona, Angel Class, Iván Santos, and John Doe # 4. It must be noted that, at the time of arrest, all nine refused to disclose their names and were admitted at MDC–Guaynabo identified as John Doe # 1 to # 9.

3. For all practical purposes the date and time in which the defendants were delivered at MDC–Guaynabo is the same as that in which the arrestees would have been presented in court for initial appearance.

4. *Id.*

to Camp García, where the individuals were processed. The arrestees were then transported from Camp García, in Vieques, to Roosevelt Roads Naval Station, in Ceiba, a one-hour boat ride. Once at Roosevelt Roads, the Navy finalized identifying, interviewing, and photographing the group of over one-hundred detainees. Thereafter, the arrestees were turned over to the custody of civil authorities, represented by the United States Marshals, and taken to San Juan, a one-hour drive.

The logistics entailed by the Navy arrest and processing, and the eventual civil processing and transportation of the arrestees to the metropolitan area was not a simple task. The majority of Deputy U.S. Marshals available had been previously assigned to secure the perimeters within the naval base at Camp García, leaving a small number of Deputy U.S. Marshals available for the processing of arrestees.[5] Thus, special consideration should be given to:

(a) the limited transportation means between Vieques and Puerto Rico;

(b) the burdensome conditions being faced by the U.S. Marshals (limited available personnel to arrest, process, and transport over one-hundred arrestees, while still meeting security requirements);

(c) the large number of violent incidents being reported (which excluded the possibility of assigning a judicial officer to conduct initial proceedings to any other place than secure/court premises);

(d) the fact that no charging document was presented against the arrestees until Monday, April 30, 2001;

(e) the fact that all arrestees (except those named under footnote No. 1) were presented before a judicial offi-

cer within forty-eight hours of being arrested by U.S. Navy personnel or having custody transferred to the U.S. Marshals and brought to Puerto Rico.

Finally, as of Sunday afternoon, April 29, 2001, upon receiving notice that the U.S. Marshals did not have sufficient personnel to escort over one-hundred arrestees to court, arrangements were made to hold the initial appearances at MDC–Guaynabo, the most logical place that could accommodate the large number of people to be handled. All regular visits to MDC had to be canceled by the Bureau of Prisons. Equipment was gathered for use, such as copy machines and faxes. Personnel was assigned to process the individuals, including two magistrates, two courtroom deputy clerks, two interpreters, and various other court employees. A system had to be devised between the Clerk's Office and MDC to coordinate the bond, bond setting, and taking of the bond monies. The charging documents and names of arrestees were not filed with the court until Monday, April 30, 2001, and the initial appearances were held. By late Monday evening, 125 arrestees had been processed. One-half of those processed were immediately released on bond.

Based on the extraordinary demands fixed by the large number of arrestees, and considering the facts described above, it does not appear that there was an unnecessary delay in bringing the arrestees before a magistrate judge for initial appearance. Certainly, the time elapsed between late Friday evening and Sunday was not unreasonable, considering the large number of people arrested and the mechanisms that needed to be implemented for their processing.

---

5. This court had to continue court settings for Friday, April 27, du to the unavailability of

Deputy U.S. Marshals to assist in court hearings at the Hato Rey Courthouse.

The motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**