MORENO, J., Concurring.
I agree with the majority that our decision in De Lancie v. Superior Court (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142] (De Lancie) was superseded by the 1994 amendment to Penal Code section 2600 such that, subject to Penal Code section 636,[1] “California law now permits law enforcement officers to monitor and record unprivileged communications between inmates and their visitors to gather evidence of crime.” (Maj. opn., ante, at p. 1010.) In this case, however, the Alameda County prosecutor, without a warrant, asked the Santa Rita jail authorities to monitor and record defendant’s in-house jail conversations and her outbound telephone calls. I write separately to underscore that federal law, specifically, title III of federal Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2520) (the Act), still restricts the warrantless monitoring[2] of an inmate’s outbound telephone calls.
I
In People v. Otto (1992) 2 Cal.4th 1088 [9 Cal.Rptr.2d 596, 831 P.2d 1178], we recognized that the Act governs wiretapping violations in California. We stated: “ ‘The purpose of the [Act] . . . was effectively to prohibit . . . all interceptions of oral and wire communications, except those specifically provided for in the Act....’” (Otto, supra, at p. 1100, quoting United States v. Giordano (1974) 416 U.S. 505, 514 [94 S.Ct. 1820, 1826, 40 *1014 L.Ed.2d 341].) The Act defines a “ ‘wire communication’ ” as “any aural transfer ... by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . furnished or operated by a [common carrier] . . . .” (18 U.S.C. § 2510(1).) As common carriers operate outbound telephones, calls over such telephones are “wire communications.” Internal jail phones, on the other hand, are not part of any public telephone system and are not furnished by a common carrier. As such, they are not covered by the Act. (See, e.g., People v. Santos (1972) 26 Cal.App.3d 397, 401-402 [102 Cal.Rptr. 678].)
The Act requires that a judicially authorized warrant be obtained before wiretapping can take place. (18 U.S.C. § 2518.) There are two exceptions to the warrant requirement: (1) where the interception is “by an investigative or law enforcement officer in the ordinary course of his duties” (18 U.S.C. § 2510(5)(a)(ii)); or (2) where “a person acting under color of law” wiretaps, and one party to the communication has given prior consent. (18 U.S.C. § 2511(2)(c).) Where the Act is violated, the remedy is suppression of the intercepted communication. (18 U.S.C. § 2515.)
In the seminal case of United States v. Paul (6th Cir. 1980) 614 F.2d 115 [61 A.L.R.Fed. 816] (Paul), the government took the broad view that the Act did not apply to the secret recording of outbound telephone calls originating from prison. (Id. at p. 116.) The Paul court rejected this argument and held that the Act did apply, but found that the prison wiretap was permissible under 18 United States Code section 2510(5)(a)(ii), the Act’s “ordinary course of duties” exception, because (1) the monitoring was done pursuant to a policy statement issued by the Federal Bureau of Prisons; and (2) posted telephone rules gave the inmates “reasonable notice” that such monitoring might occur. (Paul, supra, at p. 117.)
In U.S. v. Sababu (7th Cir. 1989) 891 F.2d 1308, 1328-1329, the court found the ordinary course of duties exception applied where (1) the monitoring was conducted pursuant to an established prison policy; (2) monitoring notices were posted over each outbound telephone in English and Spanish; and (3) during orientation, the inmates were told that their outbound telephone conversations were subject to monitoring.
The federal courts have also found, under similar facts, that jailhouse wiretapping falls within 18 United States Code section 2511(2)(c) under an “implied consent” theory. For example,, in U.S. v. Amen (2d Cir. 1987) 831 F.2d 373, 378-379, the court found “implied consent” where (1) the prisoner attended a lecture that outlined the prison’s monitoring policy; (2) he received a copy of a handbook that stated that outbound telephone calls *1015 would be monitored; and (3) monitoring notices, in English and Spanish, were placed on each outbound telephone.
In U.S. v. Van Poyck (9th Cir. 1997) 77 F.3d 285, 291-292, the court found “implied consent” where (1) the defendant signed a form that warned him of the prison’s monitoring and taping policy; (2) he was given a prison manual explaining possible recording; and (3) monitoring notices were posted by the outbound telephones.
It thus appears that the warrantless monitoring of an inmate’s outbound telephone calls is prohibited by the Act, unless the inmate is given meaningful notice, such as by a signed acknowledgement form, a monitoring notice posted by the outbound telephone, or a recorded warning that is heard by the inmate through the telephone receiver, prior to his or her making the outbound telephone call.
II
In the case at bar, from March 26, 1996 through June 30, 1996, the Alameda County prosecutor requested that jail officials at the Santa Rita jail secretly record all of defendant’s outbound phone calls to her friend, Ann Argabrite, and her brother, Philip Loyd. The prosecutor also requested that all of defendant’s in-house nonattomey jail conversations be recorded. The prosecutor made these requests without the benefit of a warrant. There were no warning signs in the outbound telephone area indicating that calls might be recorded. While the outbound phone system was configured to play a taped warning, the system was malfunctioning in March and April of 1996 and became operative sometime in June of 1996. It was established in the trial court that, upon arrival, each inmate was given a copy of jail rules and regulations, but it was unknown whether Loyd actually received a pamphlet that contained a warning about the monitoring policy. However, the pamphlet typically contained such a warning. Finally, jail officials operated the telephone monitoring system according to an established monitoring policy.
The Act was given short shrift at the trial court level. As stated by the Court of Appeal, “defendant placed no emphasis on it and never specifically informed the trial court that it might supply authorization to exclude the tapes.” A review of the briefs before this court supports the Court of Appeal’s statement. The trial court apparently made no factual findings as to specific dates that defendant’s outbound calls were secretly recorded. Nor did the trial court determine if any particular recording was a product of an in-house jail conversation or an outbound telephone call. I therefore agree with the Court of Appeal that the Act was not properly raised.
*1016 III
In People v. Riel (2000) 22 Cal.4th 1153 [96 Cal.Rptr.2d 1, 998 P.2d 969], we refused to exclude a secretly recorded in-house jail conversation, obtained in violation of De Lancie, under the truth-in-evidence provision (Cal. Const., art. I, § 28, subd. (d)), because “ ‘federal law [did] not bar its admission.’ ” (Riel, supra, at p. 1184, quoting People v. Hines (1997) 15 Cal.4th 997, 1043 [64 Cal.Rptr.2d 594, 938 P.2d 388].) A question left open in Riel, and resolved here, is whether a prosecutor’s warrantless request for in-house jail monitoring constitutes prosecutorial misconduct. As noted, where this request is limited to the secret monitoring of internal jail phones, the request is appropriate. Where a prosecutor requests the monitoring of outbound telephone calls, however, any monitoring must comply with the provisions of the Act. Prosecutors who request such monitoring have, at a minimum, an ethical obligation to ensure that such monitoring is in compliance with the Act. The demise of De Lancie does not signal a death knell for the protections afforded under federal law.
Kennard, J., concurred.

Penal Code section 636, subdivision (a), makes it a felony to eavesdrop on, or secretly record, a detainee’s or prisoner’s conversation with his or her “attorney, religious adviser, or licensed physician.”

Where authorities have the right to monitor, they also have the right to record. (See, e.g., People v. Murphy (1972) 8 Cal.3d 349, 360 [105 Cal.Rptr. 138, 503 P.2d 594].)