**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

MALEEK JAMES,

                Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

                Respondent - Appellee.

No. 14-35792

D.C. No. 2:12-cv-01917-MJP

MEMORANDUM[*]

---

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted October 16, 2015
Seattle, Washington

Before: W. FLETCHER and GOULD, Circuit Judges and EZRA,[**] District Judge.

Appellant Maleek James appeals the district court's order denying his

petition for habeas corpus relief under 28 U.S.C. § 2255. James's habeas petition

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]     The Honorable David A. Ezra, District Judge for the U.S. District
Court for the District of Hawaii, sitting by designation.

raised three separate ineffective assistance of counsel claims, two of them certified and one of them uncertified for appeal. We affirm.

We agree with the district court's determinations regarding James's first certified claim of ineffective assistance of counsel. James's counsel was constitutionally deficient in failing to object to the prosecutor's improper voir dire. We do not reach the question of whether James's failure to prevail on his voir dire claim under the plain error standard on direct appeal necessarily forecloses his ineffective assistance of counsel claim on collateral review, for we hold that James nonetheless failed to show a reasonable probability of a different outcome had his counsel made a sufficient objection. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). The prosecution's improper voir dire was brief, and the government had a strong case given James's inconsistent statements to law enforcement, the testimony of his coconspirators, and the incriminating statements he made during a recorded telephone call with a coconspirator.

James's second certified ineffective assistance of counsel claim also fails. James's counsel may have provided incomplete advice regarding the scope of Federal Rule of Evidence 609 and the government's ability to impeach him with a conviction that was over ten years old. His counsel's advice, however, was substantially correct in light of the facts of this case. If James had testified that he

was a law abiding citizen who had "never been in trouble as an adult," the government would have been able to impeach him with his Canadian conviction despite its age. *Cf. United States v. Bensimon*, 172 F.3d 1121, 1126 (9th Cir. 1999) (holding that the district court erred in permitting an old conviction to impeach a defendant when the defendant did not "portray[] himself to be a 'law-abiding' citizen"). To the extent more accurate advice from defense counsel would have caused James to avoid this particular testimony, James was not prejudiced. The government submitted strong evidence substantially contradicting the testimony James would have offered had he taken the stand.

Finally, James's uncertified claim likewise fails. We find that his counsel was not constitutionally deficient for failing to move for the suppression of the recorded telephone call because the recording did not violate the Fourth Amendment. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."). James did not have a reasonable expectation of privacy in the phone call because he knew the call was being placed from a prison and the other participant on the phone call told him not to say anything over the phone. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Shryock*, 342 F.3d 948, 978 (9th Cir. 2003); *United States v. Van Poyck*, 77 F.3d 285, 291 (9th

Cir. 1996). The recording of the phone call itself was lawful because the other party to the call consented. 18 U.S.C. § 2511(2)(c); *Shyrock*, 342 F.3d at 977–78.

**AFFIRMED.**



Maleek James v. United States of America, No. 14-35792
Dissent of Judge Gould

GOULD, Circuit Judge, dissenting:

I part ways with the majority's conclusion that James did not suffer

*Strickland* prejudice because of his counsel's failure to object to the prosecutor's

improper voir dire.[1]  In my view, there is a reasonable probability that James would

have been acquitted if the prosecutor had not implied during voir dire that James

was a violent kingpin by discussing notorious mob boss John Gotti and his hitman

Sammy "The Bull" Gravano with the veniremembers.

We have already correctly concluded on direct appeal that the prosecutor's

comments were "unnecessary and inappropriate."  *United States v. James*, 494 F.

App'x 745, 747 (9th Cir. 2012).  That is an understatement.  The government's

interest "in a criminal prosecution is not that it shall win a case, but that justice

---

[1] The majority does not decide whether James's claim of *Strickland* prejudice is foreclosed by our conclusion on direct appeal that the prosecutor's improper statements did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings."  *United States v. James*, 494 F. App'x 745, 747 (9th Cir. 2012) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).  In my view, the two standards are different.  While the "substantial rights" prong of plain error review has some overlap with *Strickland*'s "reasonable probability that the error affected the outcome of the trial" standard, *Marcus*, 560 U.S. at 262, the fourth prong of plain error is more stringent in that it requires a showing that the trial was *seriously* affected, and courts of appeal have discretion to ignore the error under the fourth prong even when the first three prongs are met.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  Our memorandum disposition in *James* does not discuss whether there was a "reasonable probability" that appellant James would have been acquitted absent the prosecutor's improper statements.

shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). If the government was prosecuting an individual as a serial murderer, could it fairly refer to Jack the Ripper during voir dire? Or in a treason case, could the prosecutor invoke images of Benedict Arnold before the veniremembers? John Dillinger in an armed bank robbery case? Al Capone in a federal tax evasion case? In my view, references to famous criminals during jury voir dire should not be a tool in the government's arsenal while it is under a duty to conduct a fair trial. Such comparisons would unduly bias the veniremembers and undercut the presumption of innocence that "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Applying these principles here, I conclude that the prosecutor's invocation of Gotti and Gravano in this case would have caused the jury to speculate, before the trial even began, that James was equally violent and dangerous, and these reckless and inappropriate voir dire questions almost surely had a negative effect on James's prospects with the jury.

The majority reasons that because the voir dire was "brief" and the government's case "strong" there was no reasonable likelihood that the inappropriate comments affected the verdict. *Ante* at 2. But the government's case against James rested in large part on the testimony of alleged coconspirator Naseer Hussain, which followed Hussain's favorable plea deal and promise to cooperate with the government. In closing, defense counsel strenuously argued to the jury

that it should "utterly reject" Hussain's testimony as "a pack of lies" resulting from his "very sweet deal" with prosecutors. The jury would have been hesitant to do so, however, if it recalled Gravano's pivotal role in helping to take down John Gotti after Gravano accepted a generous plea deal and agreed to cooperate with the government. *See United States v. Locascio*, 6 F.3d 924, 929–30 (2d Cir. 1993) (noting, in Gotti's direct appeal, that Gravano's testimony at trial "was especially damaging" because he was "a high-level insider"). James also provided a plausible explanation for his possibly incriminating statements in the phone call with his sister-in-law, with defense counsel arguing that James's subsequent questions to her indicated that he did not have knowledge about her conduct and therefore was not involved in the conspiracy.

The government's case against James was not weak, but the jury may very well have acquitted James absent the prosecutor's statements to the jury—before the trial even began—that implicitly compared James to John Gotti and the testifying coconspirator to Sammy Gravano. James "need not show that counsel's deficient conduct more likely than not altered the outcome in the case," *Strickland*, 466 U.S. at 693, and I believe the reasonable probability standard is satisfied here. James is entitled to a trial in which jurors do not view him with images and tales of John Gotti and Sammy "The Bull" Gravano impressed in the jurors' minds from voir dire. I would grant habeas relief and let James have a new trial where he is

convicted or acquitted based solely on the evidence presented to the jury.